429 So.2d 1216 (1983)
Doris SIKES, As Personal Representative of the Estate of Noah Lee Sikes, Deceased, Appellant,
v.
SEABOARD COAST LINE RAILROAD COMPANY, a Corporation, Appellee.
No. AL-488.
District Court of Appeal of Florida, First District.
March 9, 1983.
Rehearing Denied May 3, 1983.
*1217 William C. Gentry of Bedell, Bedell, Ditmar & Zehmer, Jacksonville, for appellant.
E. Dale Joyner and J.W. Prichard, Jr., of Toole, Taylor, Moseley & Joyner, Jacksonville, for appellee.
ERVIN, Judge.
In this wrongful death action, stemming from a train/log truck collision in Jacksonville, the jury found that appellee and defendant below, Seaboard Coast Line Railroad (SCL), was not liable for any damages to the decedent's estate. We reverse and remand for further proceedings, finding that the lower court erred in striking appellant's prayer for punitive damages, in refusing to admit crucial evidence indicating that SCL was on notice as to the dangerous nature of the railroad crossing, in admitting the Florida Driver's Handbook as a defense exhibit, and in denying plaintiff's motion to recuse due to judicial bias. We affirm the lower court's determinations to strike from the pleadings a cause of action sounding in contract as well as to admit testimony of an accident reconstructionologist.
On August 22, 1979, Noah Sikes, the decedent, was driving a truck hauling a load of pulpwood east on Beaver Street in Jacksonville. With him in the cab was his son, Stevie. Sikes slowed his truck in an effort to make a turn onto Halsema Road and head south to his destination, a sawmill. *1218 Due to the fact that his fully loaded truck was roughly 80 feet in length, Sikes, while making the turn, was apparently preoccupied with avoiding a collision with another vehicle or with a telephone pole. By the time he had cleared the intersection, he was nearing the Halsema Road railroad crossing, which was only 110 feet from the intersection. Unfortunately, one of appellee's trains was then also approaching the crossing. The evidence indicates it was traveling slightly below the 79 MPH speed limit, and that its whistle was sounded. When the train was approximately 600 feet from the crossing, a train fireman noticed the Sikes truck was only about 10 to 12 feet from the crossing. It appears the train operators attempted to stop the train, and according to the decedent's son, his father applied the brakes as soon as he had cleared the Beaver/Halsema intersection, although a post-accident inspection of Halsema Road reflected that there were apparently no skidmarks on the roadway.
While ordering his son to jump from the cab, Sikes himself did not do so, and the truck proceeded into the path of the oncoming train, thereby engendering this wrongful death action. At trial the defense presented two witnesses who testified that Sikes' son had stated immediately after the accident, "I wish they had fixed them damn brakes on the trailer," and "The God damn trailer brakes didn't hold."

I. THE MOTION TO DISMISS COUNT II AND TO STRIKE THE REQUEST FOR PUNITIVE DAMAGES.
Following the accident, Sikes' wife, personal representative of his estate, filed a two-count complaint, alleging in Count I a cause of action sounding in tort for wrongful death, and in Count II, realleging Count I in its entirety, including the allegation that the cause sounded in tort. However, Count II asserted the additional facts that the Sikes estate was entitled to damages, because Sikes was a third-party beneficiary of an accidental-injury-indemnity and hold-harmless clause in a contract between the Florida Department of Transportation (DOT) and SCL, the primary purpose of which was for the installation of railroad crossing signals and gates at the Halsema Road crossing. Mrs. Sikes also included a prayer for compensatory and punitive damages in both counts. The lower court granted a motion to dismiss Count II as well as to strike the prayer for punitive damages in both counts.
Appellant argues that Count II, sounding in contract, was improperly dismissed. SCL counters that dismissal was proper because Sikes violated Florida Rule of Civil Procedure 1.110(f),[1] by alleging two separate causes of action in one count. A motion to dismiss, however, is not the proper way to correct such technical pleading errors. A motion to compel separate statements would have been the proper course of action. Plowden & Roberts, Inc. v. Conway, 192 So.2d 528, 531 (Fla. 4th DCA 1966). However, we affirm the lower court's dismissal, because the restrictive wording of the contract at bar could not be interpreted to justify a third-party beneficiary claim. Regarding the prayer for punitive damages as it pertains to Count I, we reverse the lower court's dismissal. The facts and allegations, if proven, could justify an award of punitive damages. Rupp v. Bryant, 417 So.2d 658 (Fla. 1982).

II. ALLEGED ERRORS COMMITTED DURING THE COURSE OF THE TRIAL.

A. Evidence of Similar Facts.
The lower court refused appellant's request to admit into evidence four reports *1219 prepared by SCL employees concerning occurrences in which SCL railroad trains almost hit log trucks crossing the tracks at Halsema Road. The reports involved "near miss" accidents occurring between three and fifteen months before the accident in the case at bar. One report involved a "near miss" that occurred three months prior to the Sikes accident, but the report was not filed until three days following the occurrence of the accident below. The record reveals that these reports were prepared as part of an ongoing safety program by SCL to locate and advise drivers involved in these incidents to be especially careful while crossing the railroad tracks at Halsema Road.[2]
SCL objected to the admission of these reports because: (1) they displayed evidence of a safety program, preventive in nature, and (2) the circumstances documented in the report were not substantially similar to the circumstances at bar.[3] The lower court excluded the reports on the basis of "public policy" considerations, commenting that the reports suggested not that the crossing was dangerous, but that the drivers were reckless. The lower court considered it was highly beneficial to the public for SCL to avoid potential safety problems by advising the drivers to observe proper precautions when using the crossing.
Although the parties have extensively briefed the law regarding the similarity of circumstances rule, it appears to us that the lower court based its ruling primarily on its view that the reports were part of a preventive safety program. The rule of law barring admission of evidence on such basis is embodied in Section 90.407, Florida Statutes, which states: "Subsequent remedial measures.  Evidence of measures taken after an event, which measures if taken before it occurred would have made the event less likely to occur, is not admissible to prove negligence or culpable conduct in connection with the event." (e.s.)
The lower court's ruling was correct in part. The court had abundant facts before it from which it could conclude that the measures taken by SCL were motivated by public policy considerations. The legislative reason expressed for barring the admissibility of such evidence is "that if such evidence could be received against a defendant he would be penalized for an attempt to prevent injuries to others, ... ." Law Revision Council Note-1976, 6B F.S.A. § 90.407 at 435 (1979); see also City of Miami Beach v. Wolfe, 83 So.2d 774, 776 (Fla. 1955). Although the rule applies to almost any type of safety program,[4] it is only applicable to remedial measures taken after the occurrence of the accident in question. Department of Transportation v. Webb, 409 So.2d 1061, 1063 (Fla. 1st DCA 1981), rev. granted, No. 61,908 (Fla., April 5, 1982). Webb limited the rule barring the admissibility of such evidence as precluding only the introduction of such measures taken after the event giving rise to the cause of action and not remedial measures involved in other cases or events. Id.
In the case at bar each report was part of a remedial procedure initiated after another event and long before the decedent's accident. Even the memorandum dated three days after the decedent's accident is not barred by the "subsequent remedial measures" rule. The memorandum appears to have merely memorialized efforts *1220 taken before the accident. Thus, we conclude that the lower court erred in applying the rule embodied in Section 90.407, because it does not constitute a proper basis upon which to bar admission of this evidence, which we deem to be logically relevant.

B. The Admissibility of the Florida Driver's Handbook.
Appellant next asserts that the lower court erred in admitting into evidence the Florida Driver's Handbook, a defense exhibit. This pamphlet, familiar to all Floridians who have taken the Florida driver's license examination, was admitted after a foundation had been laid through the testimony of a Florida state trooper. The trooper testified that the handbook represented Florida law in regard to the operation of motor vehicles. During the closing argument of SCL's counsel, the handbook was cited as specifying the proper standard of care for truck drivers approaching railroad crossings. The handbook was then presented to the jury. Although there are Florida cases which have made passing reference to the driver's handbook,[5] it does not appear that any Florida appellate court has expressly confronted the issue of the admissibility of the handbook. Appellant's counsel argues that the handbook is hearsay and does not fit within any of the hearsay exceptions. §§ 90.801, .802, .803, Fla. Stat.
SCL argues that the handbook does not summarize Florida law; rather, it represents a generally recognized standard of care. Based on the predicate laid through the testimony of the state trooper, the handbook was clearly introduced into evidence to prove what Florida law and DOT policy required of the decedent while operating his truck at crossings. SCL next argues that the handbook does not fall within the definition of hearsay, because it is clearly trustworthy, based on the state trooper's testimony, and is self-authenticating.
We disagree with SCL's contentions. We conclude the handbook represents a classic example of hearsay. "`Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (e.s.). The handbook is nothing more than a written statement of the declarant who compiled the pamphlet, which was introduced to prove the truth of what Florida law and DOT policy require. The primary objection to the admission of hearsay evidence is, of course, that an adverse party is denied the opportunity to cross-examine the out-of-court declarant  in this case the individual(s) who prepared the handbook  in order to expose errors in the writing or statement. See Law Revision Council Note-1976, 6C F.S.A. § 90.802 at 261 (1979); Brinson v. State, 382 So.2d 322, 324 (Fla. 2d DCA 1979). Thus, the trustworthiness of the handbook cannot be ascertained.
SCL impliedly suggests that the pamphlet is trustworthy, because it is self-authenticating. That the handbook is an official book, pamphlet, or other publication "purporting to be issued by a governmental authority"  in this case the Florida Department of Motor Vehicles (DMV)  and is consequently self-authenticating by virtue of Section 90.902(5), Florida Statutes, does not per se establish its trustworthiness. Cf. United States v. Hitsman, 604 F.2d 443, 447 (5th Cir.1979); Yates v. Bass Ranch, Inc., 379 So.2d 710, 711 (Fla. 4th DCA 1980). The statute merely aids the party proponent by not requiring him to introduce extrinsic evidence to establish the handbook's authenticity, as an official document. Thus, this case involves the admissibility of hearsay evidence in the form of a public document published by the DMV, which is purported to represent a combination of Florida law and official DOT policy.
The handbook may yet be admissible, if it falls into one of the enumerated exceptions to the hearsay rule. These exceptions, which are embodied in Section 90.803, Florida Statutes, state in relevant part:

*1221 90.803 Hearsay exceptions; availability of declarant immaterial.  The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
* * * * * *
(8) PUBLIC RECORDS AND REPORTS.  Records, reports, statements reduced to writing, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters observed pursuant to duty imposed by law as to matters which there was a duty to report, excluding in criminal cases matters observed by a police officer or other law enforcement personnel, unless the sources of information or other circumstances show their lack of trustworthiness.
(e.s.) We find, however, that the handbook does not fall within the "public record hearsay exception," and that it was error to have admitted the handbook into evidence on that basis.
Reaching this conclusion requires a dissection of the public record hearsay exception and careful analysis of the relevant case law. The Federal Evidence Code forms an appropriate and persuasive guide, because the numbering system and significant, although not all, portions of the Florida Evidence Code represent an adaptation of the Federal Evidence Code. See Ehrhardt, A Look at Florida's Proposed Code of Evidence, 2 F.S.U.L.Rev. 681, 682-683 (1974). This court has noted on numerous occasions:
If a Florida statute is patterned after a federal law, on the same subject, it will take the same construction in the Florida courts as its prototype has been given in the federal courts insofar as such construction is harmonious with the spirit and policy of Florida legislation on the subject.
Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108, 116 (Fla. 1st DCA 1977); see also Hu v. Crockett, 426 So.2d 1275, 1278 (Fla. 1st DCA 1983); Hall v. Oakley, 409 So.2d 93, 97 (Fla. 1st DCA 1982).[6]
Section 90.803(8), Florida Statutes, is for all purposes the same as Federal Evidence Rule 803(8), except that the federal rule adds a subsection not relevant to the case at bar. 1 Gard, Florida Evidence § 8.08 (2nd ed. 1980). Both the federal and Florida versions of the public records hearsay exception apply to "[r]ecords, reports, statements reduced to writing or data compilations, in any form ... ." (e.s.). Thus, a driver's handbook as an official public document might fall within this hearsay exception. However, the federal and Florida evidence rules allow the document into evidence only if (1) it sets forth the activities of an office or agency, or (2) it relates to "matters observed pursuant to [a] duty imposed by law as to matters which there was a duty to report." § 90.803(8), Fla. Stat.; Fed.R.Evid. 803(8). The former requirement is obviously not applicable, but the handbook might fall under the latter requirement. The latter requirement, that the matters in the document must have been reduced to writing pursuant to a duty to observe imposed by law, relates directly to appellee SCL's argument that the handbook is completely trustworthy, because "[t]he special trustworthiness of official written statements is found in the declarant's official duty and the high probability that the duty to make an accurate report has been performed." McCormick on Evidence § 315 at 735 (2nd ed. 1972); see generally Annot., 80 A.L.R.3d 414 (1977).
Lack of such a duty imposed by statute or administrative rule has resulted in court determinations holding that the public records hearsay exception is inapplicable. Wetherill v. University of Chicago, 518 *1222 F. Supp. 1387, 1389-90 (N.D.Ill. 1981) (under parallel federal rule); Zenith Radio Corp. v. Matsushita Electric Industrial Co., 505 F. Supp. 1190, 1296 (E.D.Pa. 1980) (same); McCormick, supra, at § 315 n. 4 (and cases cited therein). Neither our research, the parties' briefs, nor counsels' oral arguments reveal any Florida statute or duly promulgated administrative rule imposing a duty on anyone to prepare a driver's handbook. Finding the absence of any duty imposed by law, we must conclude the handbook is inherently untrustworthy and fails to satisfy the requirements of section 90.803(8).
We recognize that the public records hearsay exception is derived from the common law, Law Revision Council Note-1976, 6C Florida Statutes Annotated Section 90.803 at 274, and that there are a number of early Florida Supreme Court decisions which specifically hold that a lack of statutory authority imposing a duty is irrelevant to the applicability of the public records hearsay exception. See, e.g., Branch v. State, 76 Fla. 558, 80 So. 482, 485 (1918); Bell v. Kendrick, 25 Fla. 778, 6 So. 868, 869 (1889); see also Corbett v. Berg, 152 So.2d 196, 197 (Fla. 3d DCA 1963). These cases, however, apply the common law rule which, in our view, has been specifically superseded by the statutory requirement embodied in Section 90.803(8) of a legally imposed duty to report. The new Florida Evidence Code in turn supersedes the common law in those instances in which the latter conflicts with the Code. § 90.102, Fla. Stat. Although we are guided by Florida Supreme Court precedent, the obvious conflict between that court's prior opinions based on the common law and the code enacted by the legislature convinces us that the rule stated in the older opinions is no longer applicable. Therefore, the handbook, which is hearsay, cannot be held to fall within a hearsay exception. § 90.803, Fla. Stat.

C. The Admission of the Accident Reconstructionologist's Testimony.
The expert presented testimony based on depositions of Sikes' son, train personnel, statements of apparently disinterested witnesses, surveys of the accident site, two visits to the site, pictures of the site and a homicide report, among others. Based on the foregoing, the accident reconstructionologist prepared a model for the jury demonstrating how he believed the accident may have occurred. Appellant's counsel objected at least seven times, arguing that the expert was testifying based on information not in evidence.[7] The lower court admitted the evidence, but ordered the witness to testify that his testimony was "based on certain assumptions" and "in his opinion," a direction that we think was correct as part of an effort to place the testimony into proper perspective.
Appellant argues unpersuasively that the expert's testimony was based on information either not in evidence or that was inadmissible. Section 90.704, Florida Statutes, states:
The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, him at or before the trial. If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence.

(e.s.). The statute clearly states that the facts or data "need not be admissible in evidence" if they are the type of information "reasonably relied upon" by experts on the subject that supports the opinion expressed. In this case the expert revealed the sources of the information on which he based his opinion, and these are the types of information such an expert would normally rely.
Appellant's fallback position is that the official comment to the parallel federal evidentiary rule, Rule 703, would bar the admission of such testimony, as it states that "[t]he language [of Rule 703] would not warrant admitting in evidence the opinion of an `accidentologist' as to the point of impact in an automobile collision based on statements of bystanders, ... ." Notes of Advisory Committee on Proposed Rules, Fed.Rules Evid. Rule 703, 28 U.S.C.A. at *1223 504 (1975). We reject appellant's reliance on this comment for the reason that we do not consider that it is relevant to the question of admitting the expert's testimony at bar. The sentence in the federal comment reasonably suggests that an expert should not be allowed to ask a witness where the point of impact occurred, then appear in court and parrot the nontestifying witness' views. Where the expert's actual opinion parallels that of the outside witness, then the outside witness should be produced to testify directly. 11 Moore and Bendix, Moore's Federal Practice ¶ 703.10(3) (2nd ed. 1982). This view is supported by Dallas & Mavis Forwarding Co. v. Stegall, 659 F.2d 721 (6th Cir.1981), in which a state trooper, as opposed to an accident reconstructionologist, testified as to the exact location of an automobile accident. His testimony was found to have been correctly excluded from evidence, because his opinion was based purely on the view of a solitary, biased eyewitness and unsupported by any physical evidence. Obviously, standing alone, this is not the type of evidence upon which an accident reconstructionologist should pin his opinion. The expert's opinion in the instant case was founded upon far more than conversations with a purported bystander.

III. THE MOTION TO RECUSE THE TRIAL COURT FROM ENTERTAINING THE MOTION FOR NEW TRIAL.
After the trial, appellant's counsel filed a motion for a new trial, together with a motion for recusal of the trial judge due to bias. Appellant's allegations of bias stem from the dismissal of the claim for punitive damages, facial gestures made in court, which plaintiff's counsel interpreted as showing displeasure with one of plaintiff's witnesses, and signals to defense counsel to object, together with the judge's objection for the defense, and certain other points. Attached to the verified motion were various affidavits, including affidavits from a former county judge and a lawyer who had observed the trial. Because we find the recusal motion meritorious for the reasons stated infra, and because this case must be retried for errors committed during trial, we consider the interests of fairness would best be served by the assignment of another judge within the circuit to preside over the new trial.
SCL filed a motion to strike the appellant's motion to recuse, alleging that the motion to recuse did not meet the technical requirements of a recusal motion embodied in Section 38.10, Florida Statutes.[8] Among other requirements, the statute mandates that the allegations are to "be supported in substance by affidavit of at least two reputable citizens of the county not of kin to defendant or counsel for the defendant, ... ." SCL argued that neither affiant stated that he was a resident of Duval County, and that the former county judge was in reality a resident of Clay County. Citing Florida Rule of Civil Procedure *1224 1.432,[9] which provides the method for moving to disqualify a judge for bias, appellant responded that the statute had been superseded by the rule. The lower court ruled that the statute and rule are to be read in pari materia; that the affidavits did not meet the requirements of Section 38.10, Florida Statutes, and therefore denied the motion for recusal. The lower court then conducted a hearing on the motion for new trial and denied it.
We agree that the lower court erred by not granting the motion to recuse, but our ground for this determination is different from that advocated by the appellant. Appellant relies on a committee note, proposed by the Bar committee that drafted the rule, for her argument that Rule 1.432 supersedes Section 38.10. That note provides: "This rule replaces the procedural parts of §§ 38.02, 38.04 and 38.10, F.S. and unifies the procedure to be followed for all grounds for disqualification." While committee notes are highly persuasive in ascertaining the intended operation of a rule of court procedure, we are not convinced that the disqualification rule is solely applicable to a determination of recusal. At the time the supreme court adopted the proposed Rule 1.432, it stated, "The Bar's proposed Rule 1.432 was rejected because it dealt with matters of substantive law." The Florida Bar, 391 So.2d 165, 166 (Fla. 1980). Instead, the court modified the committee note to read: "The rule is intended to unify the procedure for disqualification." Id. at 173.[10] Due to the fact that the amended committee note refers to "unifying" the disqualification procedure in a civil case, it is apparent that the lower court properly read Rule 1.432 in pari materia with Section 38.10, Florida Statutes. Accord Gieseke v. Grossman, 418 So.2d 1055 (Fla. 4th DCA 1982); R.P. Hewitt & Associates v. Hunt, 411 So.2d 266 (Fla. 1st DCA 1982); Hayslip v. Douglas, 400 So.2d 553 (Fla. 4th DCA 1981); compare Jackson v. Korda, 402 So.2d 1362 (Fla. 4th DCA 1981) (criminal case).
In considering both the language in the rule and the statute, we think that it is inappropriate to deny a recusal motion simply because the technical requirements of section 38.10 were not satisfied. In referring to the statute, the supreme court commented, "The rule must be construed, however, with order and justice in view and should not be employed to perpetuate a prejudice, to justify pride of opinion or to attach a value to unusual complexes that result in defeating its purpose." State ex rel. Davis v. Parks, 141 Fla. 516, 194 So. 613, 615 (1939). Thus, the literal filing requirements of the statute have melded also with the requirement of Rule 1.432(d), providing that the "judge against whom the motion is directed shall determine only the legal sufficiency of the motion." The trial judge must then look to the motion and supporting documents to ascertain "whether or not its content shows that the party making it has a well-grounded fear that he will not receive a fair trial at the hands of the judge." State ex rel. Brown v. Dewell, 131 Fla. 566, 179 So. 695, 697 (1938) (e.s.); see also Gieseke, at 1057.
*1225 In a case in which patent prejudice exists, "courts are quick to provide a remedy even where the statute is not complied with ... ." Pistorino v. Ferguson, 386 So.2d 65, 66 (Fla. 3d DCA 1980). This stems in part from a litigant's constitutional right to a fair trial, id., at 67, which inheres in the Florida Constitution's due process clause. Art. I, § 9, Fla. Const. Thus, once the movant meets the statutory requirement of demonstrating a well-founded belief that he is unable to receive a due process-mandated fair trial based on the obvious prejudice of a trial judge, the moving documents are deemed sufficient. State ex rel. Davis, 194 So. at 614-15; Pistorino, at 66-67. Indeed, the disqualification rule was designed to prevent what apparently occurred in this case  the creation of "an intolerable adversary atmosphere" between the trial judge and the litigant. See Department of Revenue v. Golder, 322 So.2d 1, 7 (Fla. 1975) (on reconsideration).
In the case at bar we consider the acts complained of were inherently prejudicial. Although the motion to recuse related only to the trial court's consideration of the motion for new trial, the prejudicial acts occurred during the trial itself. We think those acts would clearly require the trial judge to recuse himself from any further responsibility in this cause. Moreover, because the case is now in the posture that a new trial must be held, we consider it to be appropriate for a different judge to preside over the trial. The correct procedural vehicle to afford such relief is by issuing a writ of prohibition. Dickenson v. Parks, 104 Fla. 577, 140 So. 459 (1932); Hayslip at 555. We assume, however, as did the Pistorino court that such course will be unnecessary.
To summarize, we affirm the trial court's dismissal of Count II, and its admission into evidence of the accident reconstructionologist's testimony. However, this case is reversed and remanded for further consistent proceedings caused by the lower court's errors in (1) striking appellant's prayer for punitive damages; (2) failing to admit the SCL safety reports into evidence; (3) admitting the driver's handbook into evidence; and (4) refusing to recuse itself from hearing the appellant's motion for new trial. If this case is retried pursuant to the above directions, the chief judge of the Fourth Judicial Circuit should assign another judge within the circuit to preside over the trial.
MILLS, J., concurs.
PEARSON, TILLMAN (Retired), Associate Judge, concurs in part and dissents in part.
PEARSON, TILLMAN (Retired), Associate Judge, concurs in part and dissents in part.
I concur fully in the decision to reverse and remand for new trial. However, I differ from the majority on the grounds upon which reversal should be predicated. I agree that the trial court erred in striking appellant's prayer for punitive damages, in refusing to admit crucial evidence that SCL was on notice as to the dangerous nature of the crossing and in admitting the Florida Driver's Handbook as a defense exhibit. I would not reverse upon the ground that the trial court erred in denial of plaintiff's motion to recuse. In addition, it is my view that it was reversible error to admit the testimony of the accident reconstructionologist. The testimony was in part based upon the declarations of witnesses not present at the trial.
NOTES
[1] Florida Rule of Civil Procedure 1.110(f) states:

(f) Separate Statements. All averments of claim or defense shall be made in consecutively numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances and a paragraph may be referred to by number in all subsequent pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense when a separation facilitates the clear presentation of the matters set forth.
(e.s.)
[2] We note also that these reports suggest that SCL was on notice that the crossing was a hazard. One report urged that "this crossing should be considered extremely dangerous due to the amount of truck traffic observed at the crossing." Another report urged that "drastic measures" be taken before a serious accident occurred. Such knowledge of this hazard by SCL, without further action, could be evidence important to a jury in assessing the need for or amount of punitive damages. Cf. American Motors Corp. v. Ellis, 403 So.2d 459, 467 (Fla. 5th DCA 1981), rev. denied, 415 So.2d 1359 (Fla. 1982); see also Brown v. Missouri Pacific Railroad, 543 F. Supp. 348 (W.D.Ark. 1982).
[3] The latter objection is based on the rule of law that evidence of prior accidents is admissible, if there is a similarity of conditions, and reasonable proximity in time. Perrett v. Seaboard Coast Line R. Co., 299 So.2d 590, 591-93 (Fla. 1974).
[4] McCormick on Evidence § 275 (2d ed. 1972).
[5] See State v. Cruz, 189 So.2d 882, 885 (Fla. 1966) (Ervin, Justice, dissenting); State, Dept. of Transportation v. Manning, 288 So.2d 289, 291 n. 2 (Fla. 2d DCA 1974), cert. denied, 295 So.2d 307 (Fla. 1974).
[6] Legislative history of the two codes discloses that the Florida Evidence Code was enacted in 1976 by the Florida Legislature and approved in 1979 by the Florida Supreme Court. See Ch. 76-237, Laws of Florida; In re Florida Evidence Code, 372 So.2d 1369 (Fla. 1979). The Federal Evidence Code was initially approved by the United States Supreme Court in 1972, and later enacted by Congress in 1975, thereby predating the Florida Code. See Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183 (U.S. 1972); 88 Stat. 1947 (1975).
[7] The homicide accident report constitutes an example of inadmissible evidence. See § 316.066(4), Fla. Stat.; Duval Motor Co. v. Woodward, 419 So.2d 303, 304 (Fla. 1982).
[8] Section 38.10, Florida Statutes, states in relevant part:

38.10 Disqualification of judge for prejudice; application; affidavits; etc.  Whenever a party to any action or proceeding, shall make and file an affidavit that he fears that he will not receive a fair trial in the court where the suit is pending on account of the prejudice of the judge of said court against the applicant, or in favor of the adverse party, such judge shall proceed no further therein, but another judge shall be designated in the manner prescribed by the laws of this state for the substitution of judges for the trial of causes where the presiding judge is disqualified. Every such affidavit shall state the facts and the reasons for the belief that any such bias or prejudice exists, and such affidavit shall be filed not less than 10 days before the beginning of the term of court, or good cause shown for the failure to so file same within such time. Any such affidavit so filed shall be accompanied by a certificate of counsel of record that such affidavit and application are made in good faith, and the facts stated as a basis for making the said affidavit shall be supported in substance by affidavit of at least two reputable citizens of the county not of kin to defendant or counsel for the defendant; ... .
(e.s.)
[9] The rule states:

Rule 1.432. Disqualification of Judge.
(a) Grounds. Any party may move to disqualify the judge assigned to the action on the grounds provided by statute.
(b) Contents. A motion to disqualify shall allege the facts relied on to show the grounds for disqualification and shall be verified by the party.
(c) Time. A motion to disqualify shall be made within a reasonable time after discovery of the facts constituting grounds for disqualification.
(d) Determination. The judge against whom the motion is directed shall determine only the legal sufficiency of the motion. The judge shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall enter an order of disqualification and proceed no further in the action.
(e) Judge's Initiative. Nothing in this rule limits a judge's authority to enter an order of disqualification on the judge's own initiative.
[10] In this case we do not reach the issue of whether Section 38.10, Florida Statutes, is violative of Article II, Section 3 of the Florida Constitution, dealing with the separation of powers. The statute arguably involves certain elements of court procedure, since the statute "prescribes the method of enforcing those rights." See In re Florida Rules of Criminal Procedure, 272 So.2d 65 at 65 (Fla. 1973) (Adkins, J., concurring).