487 So.2d 1118 (1986)
Doris SIKES, As Personal Representative of the Estate of Noah Lee Sikes, Deceased, Appellant,
v.
SEABOARD COAST LINE RAILROAD COMPANY, a Corporation, Appellee.
No. BD-42.
District Court of Appeal of Florida, First District.
April 9, 1986.
Rehearing Denied May 16, 1986.
William C. Gentry and C. Rufus Pennington, III, of Bedell, Dittmar, DeVault, Pillans & Gentry, Jacksonville, and Epstein & Robbins, Jacksonville, for appellant.
E. Dale Joyner and J.W. Prichard, Jr., of Taylor, Moseley & Joyner, Jacksonville, for appellee.
*1119 SMITH, Judge.
Appellant, Doris Sikes, as personal representative of the Estate of her deceased husband, Noah Lee Sikes, seeks reversal of a final judgment after jury verdict in her negligence action against Seaboard Coast Line Railroad Company (Seaboard), appellee. Appellant relies primarily upon trial errors for reversal, contending: (1) that the trial court erred in refusing to excuse a juror for cause; (2) the court erred in admitting certain Department of Transportation trucking permit guidelines into evidence, and in instructing the jury that the guidelines had the force of law; and (3) the court erred in denying appellant's motion to strike certain expert testimony presented by Seaboard. Appellant also contends that the trial court should have granted appellant's motion for new trial based upon newly discovered evidence. We find reversible error in the trial court's refusal to excuse the juror for cause. Reversed in part, and affirmed in part.
The facts concerning this fatal trucktrain collision are stated in this court's opinion in Sikes v. Seaboard Coast Line Railroad Co., 429 So.2d 1216 (Fla. 1st DCA 1983), pet. for rev. den., 440 So.2d 353 (Fla. 1983). In that decision, this court reversed for a new trial after a defense verdict.
We first consider the claim of error arising during the voir dire examination of venireman Smith, and the colloquy between appellant's counsel, Mr. Gentry, Seaboard's counsel, Mr. Joyner, and the court regarding venireman Smith's qualifications to serve after she admitted during questioning that she knew one of the attorneys associated with Seaboard's attorney's law firm.
From the voir dire examination, we note that the juror, Mrs. Smith, identified Jay Knight as one of the railroad's lawyers, and stated that he was her son's best friend; that Knight was her son's best man at his wedding; and that she saw Knight "[t]echnically every day when he's not working." When asked by plaintiff's counsel if the acquaintance "might cause her to have reservations," she answered: "I can't say." Counsel's request for another juror was denied.
The questioning resumed, with the juror stating that she would "try to be  not partial," and "I don't think I would." However, when appellant's counsel asked whether the fact that she knew Knight might make her "give a little bit more weight to what they [Seaboard's counsel] say as opposed to what I say ...," she answered: "Probably."
At that point, the trial judge intervened with the question whether she could be fair to both sides despite the fact that her son was a friend of Seaboard's law firm, to which she replied: "I'll try to be fair." Despite this answer, to the very next question, posed by appellant's counsel  "[D]o you think that that would be an extra weight in any way on the side of the railroad?"  Mrs. Smith responded: "Yes, I suppose it would." Notwithstanding this answer, appellant's challenge for cause was again denied by the court. Finally, after exercising his remaining peremptory challenges, appellant's counsel renewed his request for removal of Mrs. Smith, which was again denied.
Challenge of jurors for cause is governed by Rule 1.431, Florida Rules of Civil Procedure:
(c) Challenge for Cause.
(1) On motion of any party the court shall examine any prospective juror on oath to determine whether he is related to any party or to the attorney of any party within the third degree or is related to any person alleged to have been wronged or injured by the commission of the wrong for the trial of which the juror is called or has any interest in the action or has formed or expressed any opinion or is sensible of any bias or prejudice concerning it or is an employee or has been an employee of any party within 30 days before the trial. A party objecting to the juror may introduce any other competent evidence to support the objection. If it appears that the juror does *1120 not stand indifferent to the action or any of the foregoing grounds of objection exists or that he is otherwise incompetent, another shall be called in his place. (emphasis supplied)
As seen from the underlined portions of the rule above quoted, one of the grounds for objection to a juror is if the juror "is sensible of any bias or prejudice" concerning the case before the court. The rule further provides: "If it appears that ... any of the foregoing grounds of objection exists ...," the juror shall be removed, and "another shall be called in his place." Rule 1.431(c)(1), Florida Rules of Civil Procedure.
Early case law counsels removal of a juror because of a friendly relationship with one of the attorney's in the case. In Johnson v. Reynolds, 97 Fla. 591, 121 So. 793 (1929), the Supreme Court found reversible error in the trial court's refusal to remove a juror because of his friendly relations with plaintiff's attorney. The juror had admitted that if there was any doubt in his mind he would give the plaintiffs the benefit of the doubt in the case, and that it would embarrass him to render a verdict against the plaintiffs. Afterwards, however, upon questions by plaintiffs' counsel and the trial judge, the juror indicated that he would be able to go into the jury room and "`render a fair and impartial verdict according to the evidence and the evidence alone.'" Id. 121 So. at 796. Commenting upon the juror's answer to the later questions put to him by plaintiffs' counsel, the court said (121 So. at 796):
Notwithstanding his answer to the latter questions, we are not surprised that defendants' counsel think that the trial in which that juror participated was tainted by the suspicion, if indeed not by the fact of his unfairness, by reason of his bias for the plaintiff, which existed because of his friendly relations with their counsel.
* * * * * *
If there is a doubt as to the juror's sense of fairness or his mental integrity, he should be excused. It is a ground of challenge for cause.
* * * * * *
[W]hen a question of the juror's fitness to serve on the score of his freedom from prejudice is presented, the question is determined within the discretion of the judge [citation omitted], his discretion may be abused, and, if it is, it is subject to review.
Finally, the court in Johnson v. Reynolds concluded with these words (121 So. at 796):
Mr. Thompson, in his excellent work on Trials, says that refinements and distinctions between "bias" and "prejudice" can serve no useful purpose in the administration of justice. If the proposed juror is affected by either state of mind, it cannot be said that he is fair-minded and impartial, and, if accepted as a juror, that he would be of that standard of impartiality which is necessary to prevent an impairment of the right to jury trial. It is difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias or prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom from its influence. By what sort of principle is it to be determined that the last statement of the man is better and more worthy of belief than the former? We think that the juror should have been excused upon the challenge by the defendant for cause and denying the challenge was reversible error.
We note that Johnson v. Reynolds has recently been cited by the Florida Supreme Court with apparent approval in Hill v. State, 477 So.2d 553 (Fla. 1985), for the proposition that if there is a doubt as to the juror's sense of fairness or his mental integrity, he should be excused. Id. at 556.
The trial court has broad discretion in ruling on challenges for cause, and manifest error must appear before such rulings will be reversed. Singer v. State, 109 So.2d 7 (Fla. 1959); Plair v. State, 453 So.2d 917 *1121 (Fla. 1st DCA 1984). We conclude, however, that this is one of those "close cases" alluded to in Sydleman v. Benson, 463 So.2d 533 (Fla. 4th DCA 1985), which should have been resolved in favor of excusing the juror rather than leaving a doubt as to her impartiality.
The trial judge's denial of the challenge for cause on the strength of the juror's testimony that she would "try to be fair" was error. In arriving at this conclusion, it is unnecessary for this court to attribute to the juror, Mrs. Smith, any lack of truthfulness, or undisclosed bias. Even assuming the juror to have answered all questions truthfully, and to the best of her ability, which we must, this did not alter the fact of her relationship with one of Seaboard's attorneys and her own clearly expressed reservations about its possible effect upon the manner in which she would view the railroad's side of the case.
Appellee argues that appellant's counsel's questions on voir dire were improper because they indicated that the juror would be required to choose between the "testimony" of Mr. Knight, and to weigh his "credibility," against that of appellant's counsel. We disagree. The tenor of the questioning never placed Mr. Knight in the position of a possible witness, but only as an advocate, or a member of the law firm appearing as an advocate in the case on behalf of the railroad, just as appellant's counsel appeared as an advocate for the plaintiff. Appellee also refers to the trial court's observation that the juror's answers were "normal." While we agree that the answers were "normal" for a juror in Mrs. Smith's position, we disagree that they were "normal" for a prospective juror who is ultimately allowed to sit in judgment in the case and render a verdict.
Appellee also attempts to escape the impact of the juror's admissions by minimizing Mr. Knight's actual appearance at the trial, arguing that he only appeared in the courtroom at the beginning, not in the presence of the prospective jurors, and did not otherwise participate in the actual trial. We find this argument unpersuasive. Mr. Knight's active role in at least some phases of trial preparation for this case is not denied. The key facts are the juror's relationship or acquaintance with the attorney, the attorney's identification with the cause of the party in court, and the responses of the juror regarding what bearing, if any, the attorney's connection with the law firm trying the case on behalf of the opposing party might have on the juror's ability to view the issues between the parties fairly and impartially. We are not prepared to hold that either party should be required to have their case tried before a juror having a comparable relationship with a member of the opposing party's law firm.
As for appellant's second point on appeal, her contention that the trial court erred in allowing into evidence a one-page document purporting to be the Department of Transportation's guidelines for issuance of special trip permits for trucks carrying 75-85 foot loads, we find no error in the admission of the evidence. Load length was made an issue by appellant, by contending that appellant's decedent, the driver of the log truck, was so preoccupied with the intricacies of maneuvering his load around the right angle turn just prior to the railroad crossing that his attention was momentarily diverted from the approaching train. There was evidence that the truck with its load of logs exceeded the 75-foot limit of his permit, and it was clearly relevant for Seaboard to prove that under the Department's regulations for permits for trucks exceeding 75-feet an escort would be required. A permit engineer from the Department of Transportation testified without objection as to load length limits and permit requirements, and we find no reason why this evidence was inadmissible. The granting of special permits by the Department is specifically authorized by statute, section 316.550, Florida Statutes (1983). Under that section, the Department is authorized to issue permits for loads exceeding the maximum length prescribed by statute, to issue or withhold such permits at its discretion, or, if such permit is issued, "to limit or prescribe conditions *1122 of operation of such vehicle or vehicles... ." The document in question was authenticated by the testimony of the Department's official (see section 90.901, Florida Statutes), and is not subject to the hearsay and other objections dealt with in our opinion on the prior appearance of this case, Sikes v. Seaboard Coast Line Railroad Co., 429 So.2d 1216 (Fla. 1st DCA 1983). Although we find the trial court's jury instruction on this issue somewhat ambiguous, we agree that the failure to have an escort, if required under the facts as found by the jury, would be in the nature of violation of a traffic regulation, as appellee argues, which may be considered only as prima facie evidence of negligence. See, deJesus v. Seaboard Coast Line Railroad Company, 281 So.2d 198, 201 (Fla. 1973).
Appellant's third point relates to the trial court's failure to strike the testimony of Jimmy McCrae, who was called for the purpose of testifying concerning the speed and acceleration capabilities of the truck being driven by the decedent. Appellant objects that McCrae was neither identified nor called as an expert witness, yet was permitted to give expert testimony. No contemporary objection to his testimony was made. After the railroad rested its case, appellant moved to strike McCrae's testimony in its entirety. We agree with appellee that the objection has not been preserved for review. As appellee points out, McCrae's testimony was not "expert" in its entirety, was not contemporaneously objected to, and the motion to strike made no effort to differentiate between his expert and ordinary testimony.
As for appellant's final point, the trial court's denial of new trial on the grounds of "newly discovered evidence," we find that our reversal on other grounds renders this point moot.
REVERSED in part, AFFIRMED in part, and REMANDED for new trial.
MILLS, J., concurs.
THOMPSON, J., dissents with opinion.
THOMPSON, Judge, dissents.
This case has been tried twice, with each trial lasting more than one week and each trial resulting in a jury verdict for the defendant. The majority, who reverse for a new trial, acknowledge that the only alleged error of any substance was the court's refusal to excuse juror Smith for cause. If I had been the trial judge I would have granted the plaintiff's motion to excuse juror Smith. If I had been the plaintiff's attorney I would have exercised a peremptory challenge to excuse that juror. However, I am not entitled to substitute my judgment for that of the trial judge, who saw and heard the voir dire questioning of the juror, and who has very broad discretion in ruling on challenges for cause. Furthermore, as was expressly recognized by the majority, manifest error must appear before the trial judge's ruling should be reversed. The majority admits this is a close question. "Manifest" means obvious, or to show or demonstrate plainly, or clearly apparent to sight or understanding. It is difficult for me to see how either the granting or denying of a motion to excuse for cause on such a close question can be manifest error.
The questioning of juror Smith on voir dire may have created an illusion of bias but did not show any actual bias. The juror's responses certainly do not create a sufficient appearance of bias to warrant a finding of reversible error in the denial of the request that she be excused.
The great weight of the evidence supports the jury's verdict in favor of the defendant. The appellant's decedent, while operating his log truck during broad daylight on a clear dry day, and while approaching a marked railroad crossing which he knew to exist, simply failed to see and hear that which was plainly there to be seen and heard. The evidence showed that the train was operating within the speed limit for trains, and that all of the train's lights, horns and other safety equipment were in working order and were in operation.
*1123 If this case is tried a sufficient number of times, I know that some jury will return a verdict for the plaintiff, but there has been no showing of manifest error that would warrant a third jury trial. I would affirm.