485 So.2d 1364 (1986)
AETNA CASUALTY & SURETY COMPANY, Appellant,
v.
Sissel COOPER, Douglas Cooper, and Daniel Cooper, As Personal Representatives of the Estate of I.S. Cooper, and Sissel Cooper, Individually, Appellees.
No. 85-567.
District Court of Appeal of Florida, Second District.
April 2, 1986.
*1365 Claire L. Hamner, of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, P.A., Sarasota, for appellant.
Ronald Alexander Cyril, of Nelson, Hesse, Cyril, Smith, Widman & Herb, Sarasota, for appellees.
SCHOONOVER, Judge.
Appellant, Aetna Casualty & Surety Company, appeals from a final judgment entered in favor of Dr. I.S. Cooper and his wife, Sissel Cooper.[1] We find that the trial court erred in admitting a prejudicial videotape into evidence, and, accordingly, reverse and remand for a new trial.
On May 13, 1977, Dr. Cooper was riding as a passenger in an automobile that was struck from the rear by another automobile driven by Edward Carloni. The Coopers sought payment from Aetna under a $1,000,000 underinsured motorist policy for damages in excess of the amount paid by Carloni's insurance company. When Aetna refused, the Coopers filed suit for damages.
The parties stipulated at trial that Edward Carloni was liable for the accident. Prior to the opening statements, the jury was instructed that they were to decide whether Dr. and Mrs. Cooper suffered any loss, injury, or damage exceeding the amount paid by Carloni's insurance and legally caused by the collision, and if so, the amount of that loss. The Coopers argued that Dr. Cooper's left eye was injured by the automobile accident and that he was subsequently unable to operate as a neurosurgeon. Aetna did not dispute the fact that at one time Dr. Cooper was an eminent neurosurgeon, but argued that any damage to Dr. Cooper's eye did not occur as a result of the accident. Conflicting medical testimony was presented on this issue.
Approximately two months before the accident occurred, a network television program aired a story pertaining to Dr. Cooper's surgical practice and his life as a surgeon. Over Aetna's objection, a videotape of the program was admitted into evidence and played to the jury. As a predicate to introduction of the tape, Dr. Cooper testified that its contents had been aired and that playing the tape to the jury would help show the losses Cooper had suffered due to his inability to perform surgery. The jury was instructed not to rely on the tape for the truth of its contents because the participants in the videotape were not under oath and could not be cross-examined. The jury was told it was being allowed to see the tape just to show why it had been made, for whatever the jury later deemed relevant.
During the course of the television program, the host, Dan Rather, discussed Dr. Cooper's reputation as a miracle worker for people who were crippled and deformed by chronic diseases and neurological disorders. The tape also contained statements made by Dr. Cooper and by his patients and their parents. The patients demonstrated their disabilities and discussed their conditions. The parents also detailed their children's conditions and spoke of the anguish and emotional pain caused by these physical disabilities.
The jury returned a verdict awarding $250,000 to Dr. Cooper and $50,000 to his wife. This appeal timely followed from a judgment entered pursuant to that verdict. We find that the trial court erred in admitting the videotape into evidence and in allowing it to be played to the jury.
The admissibility of a videotape must be decided according to the particular circumstances in each case. In the normal *1366 course of a trial, testimony is limited by the rules of relevance and competence, and the witnesses are sworn and subject to cross-examination. A dialogue on tape is not any less subject to these rules of evidence. United States v. Schiff, 612 F.2d 73 (2d Cir.1979).
Generally, a videotape offered to prove the truth of the matter asserted constitutes inadmissible hearsay. Thus, a videotape is inadmissible unless it comes within an exception of the hearsay rule, or unless it is offered for some other admissible purpose that would remove it from the definition of hearsay. Sprynczynatyk v. General Motors Corp., 771 F.2d 1112 (8th Cir.1985).
The Coopers do not contend that the videotape was admissible as an exception to the hearsay rule, but argue that the tape, or at least a portion of it, was admissible for a purpose that would remove it from the definition of hearsay. We find that the only portion of the videotape that could be deemed relevant and admissible would be the statements concerning Dr. Cooper's preaccident reputation given by Dan Rather because they supported Dr. Cooper's claim for loss of enjoyment of life. Even the Coopers do not seriously contend that the statements, actions, and display of emotions by the patients and their parents would have been admissible had the patients and parents been called as witnesses. We do not necessarily reverse a case solely because some irrelevant material has been received into evidence along with proper material, Jones v. White, 468 So.2d 275 (Fla. 2d DCA 1985), but in this case we find that the tape was inadmissible despite its admissible portions.
Relevant evidence is inadmissible where its probative value is substantially outweighed by the danger of unfair prejudice, the confusion of issues, the misleading of a jury, or the needless presentation of cumulative evidence. § 90.403, Fla. Stat. (1983). Although evidence should not be excluded merely because it contains emotional overtones, Jesco, Inc. v. Shannon, 451 So.2d 694 (Miss. 1984); Butler v. Chrestman, 264 So.2d 812 (Miss. 1972), the jury in this case could not reasonably be expected to consider the tape solely as an aid to understanding Dr. Cooper's reputation and loss of enjoyment of life, and to disregard the provocative, emotional nature of the inadmissible statements. In addition to creating a substantial danger of unfair prejudice, the presentation of unsworn and emotionally-charged statements by Dr. Cooper's patients and their parents could only confuse the issue and mislead the jury. The evidence concerning Dr. Cooper's reputation was, moreover, merely cumulative. Other relevant evidence was available and was, in fact, used to accomplish the same purpose. Dr. Cooper testified about his special loss of enjoyment of life, his curriculum vitae was offered and received into evidence, and a colleague testified about Dr. Cooper's reputation as a neurosurgeon.
The court's limiting instruction, moreover, did not cure the prejudicial effect of the tape. Although the jury was told that the tape was being shown to them merely to establish that it had been made, they were also told that they could consider it for whatever they later deemed to be relevant. Any benefit to the factfinding process that might have been derived from the tape was far outweighed by the unfair prejudice of admitting what amounted to be ex-parte, irrelevant testimony from absent witnesses. We, accordingly, reverse the judgment and remand for a new trial. Schiff.
Because the testimony concerning causation was hotly contested, and introduction of the videotape unfairly prejudiced Aetna, justice requires that the issues of both liability and damages be submitted to the jury at the new trial. See Lawson v. Swirn, 258 So.2d 458 (Fla. 1st DCA), cert. denied, 263 So.2d 235 (Fla. 1972).
Reversed and remanded for a new trial.
SCHEB, A.C.J., and CAMPBELL, J., concur.
NOTES
[1] Subsequent to the filing of this appeal, Dr. Cooper died and Sissel Cooper, Douglas Cooper, and Daniel Cooper, co-personal representatives of his estate, were substituted as appellees.