596 So.2d 1216 (1992)
Jolene PAUSCH, Appellant,
v.
STATE of Florida, Appellee.
No. 89-03225.
District Court of Appeal of Florida, Second District.
April 8, 1992.
*1217 Daren Shippy of Batchelor, Shippy & Vojak, P.A., Bonita Springs, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Dell H. Edwards, Asst. Atty. Gen., Tampa, for appellee.
FRANK, Judge.
Jolene Pausch was found guilty of the second degree murder of her son and sentenced to a life term of imprisonment. She was also convicted of aggravated abuse of the child and sentenced to a concurrent 15 year term, a period in excess of the guidelines range. She challenges the convictions and the departure sentence. Pausch is entitled to a new trial based upon the trial court's determination to permit the jury to hear a tape recording of her post-arrest interview with a police officer.
Pausch, with her infant son, Christopher, moved to Florida from Alabama in 1988 to work as the resident housekeeper for Jack and Sara Bell. The Bells had two children, Jason and Matthew. Robert Erwin, Jr., one of Jack Bell's employees, also lived with the Bells.
On the day Christopher sustained his fatal injury, Jack and Sara Bell and Erwin were away from the home on an errand. The children, as was frequently the case, were left in Pausch's care. At some point during the Bells' absence from the home, Pausch attempted to call their car phone. When Sara attempted to return the call, no one answered. Upon returning home, Sara noticed Pausch sitting on a backyard swing with Jason and Matthew. When Sara asked why she had called the mobile phone, Pausch said that Christopher looked "sick." Sara went to Christopher's bedroom, where she found him lying face upward on the bed. According to Sara, Christopher was gasping for breath. His lips were swollen and his face seemed discolored, almost blue. Jack rushed the child to the hospital, where he was placed on a life-sustaining device. Two days later, the attending physician determined Christopher was brain dead and removed him from life support. An autopsy revealed that Christopher sustained cerebral trauma and his body revealed multiple contusions.
*1218 Pausch was asked at the hospital, but could not explain, the cause of her child's injuries. Later that evening, Pausch was arrested. Detective David Bonsall questioned her rigorously in an interview conducted shortly following her arrest. During the interview, which was recorded, Pausch never admitted responsibility for the death of her son. She simply asserted that Christopher must have fallen to the floor while asleep. Bonsall disbelieved her story and accused her of lying, and of abusing her son. Bonsall persistently condemned Pausch as an unfit mother, and predicted that if Christopher survived to be returned to her care, she would eventually kill him.
And you're gonna' kill him. Rather [sic] it happens today, tomorrow, six months from now, at the rate you're going you're gonna' kill him. If you get him back you're gonna' kill him.
.....
And you've hurt him in the past, and that can be shown, he's hurt right now, and he's gonna' get hurt again.
.....
And I'll also note for the record that you never inquired about your child, that you never asked to leave to go see your child. And that you basically sat here with your head on top of your arms, listening to what I've been saying.
At trial, the state offered an unedited version of Pausch's custodial interview. In laying a predicate for introducing the recording, the state called Officer Bonsall who claimed that he approached the interrogation in "a very quiet and subdued [manner]" to give Pausch "as much opportunity as possible to talk without badgering." The trial court allowed the jury to hear the tape despite objection from Pausch's attorney.
Pausch contends that the substance of the interview was not relevant to any issue at trial, or, in the alternative, that any slight value attributable to it was substantially outweighed by the prejudicial impact Bonsall's remarks had on the proceedings. The state has responded that Pausch's present attack upon permitting the tape to be used is barred because it was not raised in the trial court. We agree that Pausch should have advanced a more specific objection to the tape recording, but we nonetheless find that the error fundamentally undermined the fairness of her trial. In fact, during a pause in the playing of the tape, her attorney protested any further disclosure of its contents. The trial court noted its discomfort with the recorded material but nonetheless overruled Pausch's objection:
THE COURT: Counsel, I'm going to make a statement on the record here that's probably going to be read somewhere up the line.
Nobody brought these tapes to my attention, nobody showed me the transcript of what was on these tapes, and nobody moved to suppress any of the stuff that was in the tapes. I think you moved to have them not admitted into evidence because of some kind of relevancy problem and some Williams Rule problem.
I denied those.
Now, I'll tell you quite honestly, and frankly, you're absolutely right, 95 percent of that tape that I've heard so far is all Detective Bonsall, and the other five percent is so far Ms. Pausch saying the same thing that she said the whole time.
I'll grant you, had I had an opportunity ahead of time to go through the tapes, listen to the tapes, my rulings might have been different; but the die has been cast and tapes have been admitted, and nobody brought it to my attention, not Counsel for the State or Counsel for Defense. So you're going to live with it. Play the rest of the tape.
It is our judgment that allowing the jury to hear the nature and intensity of Bonsall's interrogation denied Pausch a fair trial. The introduction of Bonsall's statements was prejudicial, confusing, and misleading. *1219 § 90.403, Fla. Stat. (1989); see also, Pottgen v. State, 589 So.2d 390 (Fla. 1st DCA 1991) (graphic contents of videotape).
Although evidence should not be excluded merely because it contains "emotional overtones," the jury in this case could not have reasonably been expected to isolate and extract from the recording that which was admissible as evidence of the crime while disregarding the aspersions of guilt created by Bonsall's words. See Aetna Casualty & Surety Co. v. Cooper, 485 So.2d 1364 (Fla. 2d DCA 1986). We acknowledge that the question of whether to admit or reject the whole or any portion of a challenged recording is properly within the discretion of the trial court. Herrera v. State, 532 So.2d 54 (Fla. 3d DCA 1988). In our view, it is a better practice for the trial court to preview the recording to foreclose the possibility that any inadmissible or prejudicial portions might reach the jury. C. Ehrhardt, Florida Evidence § 401.4 (2d ed. 1992). In any subsequent trial of this matter, only those sections of the tape that are relevant and free from the taint of Bonsall's words may be played to the jury. See Food Fair, Inc. v. Anderson, 382 So.2d 150, 156 (Fla. 5th DCA 1980).
We turn now to points raised by the defendant that implicate the so-called Williams rule. In reliance upon the proscription enunciated in Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), Pausch challenges the testimony indicating that Christopher appeared undernourished when brought to the hospital and that, on one occasion, she had used excessive force to discipline him. We do not agree that Williams was violated. The United States Supreme Court recently rejected a constitutional challenge to evidence of prior injuries sustained by a child that was admitted in the prosecution of a father charged with the second degree murder of his infant daughter. Estelle v. McGuire, ___ U.S. ___, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). McGuire follows the concept that because the government must prove all elements of a charged offense beyond a reasonable doubt, evidence tending to negate a claim of accidental injury is relevant to demonstrate an intent to kill, an element of the crime charged, McGuire, 112 S.Ct. at 480-81, even though the prior injury evidence is not affixed to the accused. Here, the evidence challenged by Pausch was relevant to show that Christopher's death was "the result of an intentional act by someone, and not an accident." McGuire, 112 S.Ct. at 480. Robert Erwin testified that he had once witnessed Pausch "shaking" Christopher in anger, causing Erwin to intervene on the child's behalf. Moreover, the medical examiner who performed Christopher's autopsy, testified that when the child was measured at death, he weighed "2.8 standard deviations below his expected mean weight for his height and age." Thus, by his assessment, Christopher arrived at the hospital undernourished. Not to be ignored is the fact that one of the theories advanced by Pausch was that Christopher's death might have been the consequence of an accidental fall. The state was justified in introducing testimony designed to dispel the hypothesis of innocence. Thus the evidence was relevant to prove a material fact in issue  intentional, rather than accidental, injury; the trial court properly allowed the jury to hear Erwin's and the medical examiner's testimony. § 90.404(2)(a), Fla. Stat. (1987).
Finally, we merely comment upon Pausch's sentence, which she raises as trial court error. The trial court sentenced Pausch, on October 30, 1989, beyond the recommended guidelines range for the crime of aggravated child abuse. It failed to provide contemporaneous written reasons for departure. State v. Oden, 478 So.2d 51 (Fla. 1985); see also, Ree v. State, 565 So.2d 1329 (Fla. 1990). Pausch filed her notice of appeal the next day, October 31, 1989. The trial court did not file its written reasons until November 6, 1989. Notwithstanding *1220 that the trial court's departure grounds were not entered at the moment of sentencing, they are not before this court. The notice of appeal divested the trial court of jurisdiction to enter an untimely departure order. Thus, we have not considered the departure grounds in this appeal. See Vara v. State, 575 So.2d 306 (Fla. 2d DCA 1991).
Accordingly, based upon the foregoing, we vacate Pausch's convictions and sentences and remand for a new trial.
DANAHY, A.C.J., and CAMPBELL, J., concur.