617 So.2d 837 (1993)
Mac Ray WRIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 92-1940.
District Court of Appeal of Florida, Fourth District.
May 5, 1993.
Rehearing Denied May 26, 1993.
Richard L. Jorandby, Public Defender, and Paul E. Petillo, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Melynda L. Melear, Asst. Atty. Gen., West Palm Beach, for appellee.
*838 PER CURIAM.
This appeal arises from appellant being retried and reconvicted on counts of first-degree murder and armed burglary following the decision in Wright v. State, 586 So.2d 1024 (Fla. 1991).
The jury found appellant guilty as charged. The trial court sentenced appellant to life imprisonment without possibility of parole for twenty-five years for the first-degree murder conviction. For the armed burglary conviction, the court sentenced appellant to a consecutive twenty year term of imprisonment. At the sentencing hearing, the trial judge pronounced that he was upwardly departing from the guidelines based upon the contemporaneous capital conviction. The judge wrote the reason for departure directly on the scoresheet. The instant appeal followed.
We affirm his conviction for first-degree murder. As to his other count, the information only alleged armed burglary, not burglary with assault. The trial court's reclassification to a life felony was without foundation; thus, we reverse and remand with direction that appellant's judgment and sentence be for armed burglary, a first degree felony.
Appellant contends he is entitled to a third trial after being twice found guilty by two juries. We disagree.

I
He first claims it was error for the trial court not to declare a mistrial because of the inadvertent remark by a witness, Latonya Ashe.
At appellant's retrial, Bessie Webster testified that in June 1986 her daughter, Sandra Ashe (the homicide victim), lived at 1911 Avenue Q in Fort Pierce with Ashe's children: Latonya Ashe (age 12), Nadieal Ashe (age 7), and Mac Ray Wright, Jr. (age 5). Webster owned the home and rented it to Sandra through the Housing Authority. The lease was in Sandra Ashe's name and listed her three children. Appellant's name was not on the lease agreement. Webster did, however, admit to collecting rent from both Ashe and appellant at various times. She testified that Ashe and appellant lived together "off and on." Appellant is the father of both Nadieal and Mac Ray, Jr. Latonya, who is not appellant's daughter, also referred to him as "Daddy." Ashe alone paid the rent for June 1986.
On June 9, 1986, Webster went over to her daughter's home and discovered that the lock on the front door had been changed. She found Ashe lying in bed  her face and lips were badly swollen. Webster told Ashe to call the police if appellant tried to beat her again. While Webster was still at Ashe's home, appellant called and asked to speak to Sandra. When Webster asked appellant why he beat her daughter, appellant told her to speak to Ashe. Ashe refused to speak with appellant.
Latonya Ashe, age 17 at the second trial, testified that on Sunday, June 6, 1986, two days before her mother was killed, appellant and Ashe were arguing because appellant was spending time at Dadelia Gayle's house. Ashe drove her children over to Gayle's house and parked the car out front, waiting for appellant to come out. When appellant left, Ashe followed him in the car but failed to catch up to him.
Later that night, Latonya was awakened by the sound of appellant slapping her mother and her mother hitting the heater. When Latonya went into the living room, she observed appellant yelling at Ashe and Ashe covering her face with her hand. Ashe's nose was bloody and swollen. Latonya asked her mother whether she wanted her to call the police. Appellant "put the phone in [Latonya's] face" and slammed it down. Appellant then had Ashe pack up his clothes and put them in the trunk of his car. Appellant collected his tools from the utility room. As he was leaving, appellant told Ashe that if she called the police, he would kill her. After he was gone, they went to the hospital. Ashe's nose appeared to be broken and her lips were swollen. When Latonya arrived home from school the next day, she saw a man changing the lock on the front door. Later that day, she accompanied her mother to the police station where Ashe filed a *839 report and signed a form because she did not want appellant "to bother her anymore."
On Tuesday, June 10, 1986, the whole family was in the living room watching television. Appellant came to the front door and tried to open it with his key. When the key failed to work, he went from window to window, screaming at Ashe to open the door. They were all standing in the living room hoping that he would leave. Appellant then started to yell "very violently."
Appellant was quiet for a while and Latonya assumed that he had left. She then heard appellant kicking in the back door. He came into the kitchen and started shooting at Ashe. Appellant screamed, "You motherfucker, I told you to open the door." Ashe tried to get out the front door but it was locked. When she finally got the door open, she fell on her face. Appellant started kicking Ashe with his foot, still screaming at her. He then went back into the house, picked up some expended shells, and left. Latonya begged appellant not to shoot her mother and heard a total of five shots.
On cross-examination, Latonya testified that her mother and appellant fought on many different occasions and appellant had threatened to kill Ashe "many times." Her mother never hit appellant because she was "helpless over [him]." When asked how long appellant had lived with them, Latonya responded, "Ever since he got out of prison." Defense counsel asked for a bench conference, and the trial court deferred any discussion of the comment until the lunch recess. The trial court denied appellant's subsequent motion for mistrial. Latonya further testified that appellant drank often and on the night of the shooting, he appeared to be "in a rage."
The prosecutor read the former testimony of Dorothy Walker, who was declared physically unavailable, into the record. Walker testified that on the night of the shooting, she heard two gun shots and saw appellant run to his car and drive away. The children ran up to her and told her that their father had killed their mother. According to Walker, appellant and Ashe would fight, separate, and make up every six months or so.
Nadieal Ashe, age 12 at the second trial, testified that she was asleep in the living room on the night of the shooting. She woke up when she heard shots. Nadieal saw appellant coming from the kitchen, shooting a rifle, and "cussing." Appellant looked "out of his mind." Appellant kept screaming at her mother, telling her she should have opened the door and would "learn to listen when [he] ask[ed] her to do something." Nadieal heard five shots. Her mother eventually opened the front door and fell. Appellant smiled and turned her body over. Appellant then came back into the house, picked up the shells, and left.
Mac Ray Wright, Jr., age 10 at the second trial, also testified to the events on the night of the shooting. Appellant's key would not work and he ordered Ashe to open the door. Mac Ray heard the kitchen door "come down" and saw appellant shoot his mother. Mac Ray testified that he had fired the rifle his father used to kill his mother. "You had to cock it, like a B-B gun."
Dr. Leonard Walker, the medical examiner who performed Ashe's autopsy, testified that he found four bullet wounds, two entrance wounds in the back (right back and left buttock) and two entrance wounds in the front (shoulder and chest). Three of the four wounds were potentially lethal. Ashe died from bleeding caused by the bullet wounds.
The crux of appellant's argument is that the jurors were unable to resolve the various issues in this case, including the application of the intoxication defense, "without referring to the highly prejudicial and inflammatory knowledge that the accused has a prior prison record." Without ignoring the potential gravity of the error, we conclude that appellant has not demonstrated a right to yet a third trial on the same offenses. Pursuant to State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), this court has considered both the permissible evidence on which the jury could have legitimately *840 relied, and the impermissible evidence which might have improperly influenced the jury verdict. Unlike Ward v. State, 559 So.2d 450 (Fla. 1st DCA 1990), the evidence conclusively established that appellant did in fact shoot and kill Sandra Ashe. Unlike Cox v. State, 441 So.2d 1169 (Fla. 4th DCA 1983), the jury was not forced to choose between two competing versions of the truth.
The instant case is further distinguishable from those cited by appellant in that he also was convicted of armed burglary. The jury found appellant guilty of first-degree murder but did not specify whether it was by premeditation or by felony murder. The trial court instructed the jury on felony murder, and named burglary as the underlying felony. Despite appellant's claim that there was a dispute as to whether he had a legal right to enter the residence, we believe the evidence presented at trial conclusively established that appellant killed Sandra Ashe while committing the offense of burglary. The trial testimony clearly demonstrated that only the victim and her children's names were on the lease, not appellant's. While appellant had paid rent from time to time, the victim alone paid the rent for June 1986. Two days before the murder, appellant packed all of his belongings and left. The victim had changed the locks and appellant gained entrance to the apartment by breaking down the kitchen door. Appellant does not cite to any testimony supporting his claim that he had a legal right to enter Ashe's residence on the night of the murder.
While DiGuilio does not set forth a sufficiency of the evidence test, we believe the witness' apparent "slip of the tongue" did not influence the jury's verdict. The jury apparently did not believe that appellant was intoxicated on the night in question. Accordingly, we do not find error in appellant's conviction for first-degree murder, which we affirm. We also find no error, because of this point, upon the burglary charge; however, we shall discuss that charge later herein.

II
Appellant next contends that his sentence for armed burglary must be reversed because the trial court failed to file timely, written reasons for departure from the guidelines. At the sentencing hearing held on Saturday, June 13, 1992, the trial court indicated that it was upwardly departing from the guidelines based upon appellant's contemporaneous capital conviction. Although the trial court noted its reason for departure on appellant's scoresheet, it did not file the scoresheet until Tuesday, June 16, 1992. Appellant maintains that by failing to file its departure order the next business day, the court violated the contemporaneous rendition requirement of Ree v. State, 565 So.2d 1329 (Fla. 1990).
In State v. Lyles, 576 So.2d 706 (Fla. 1991), the supreme court explained that its holding in Ree was based upon the fact that the time for appeal runs from the date of sentencing; therefore, if the written order is delayed, the defendant's decision to appeal may have to be made without the benefit of written reasons. Id. at 708. In Lyles, the trial court did execute the mandatory written departure order on Friday, April 7, 1989, the date of sentencing, but did not file the statement until the following Monday. In rejecting the defendant's argument that Ree mandated reversal of his departure sentence, the court held as follows:
We find that when express oral findings of fact and articulated reasons for the departure are made from the bench and then reduced to writing without substantive change on the same day, the written reasons for the departure sentence are contemporaneous, in accordance with Ree. To adopt a contrary view would be placing form over substance. The ministerial act of filing the written reasons with the clerk on the next business day does not, in our view, prejudice the defendant in any respect.
Id. at 708-09. The court further found, however, that it would not be proper under Ree to enter written reasons "a few days" after the imposition of sentence. Id. at 709. In Novicki v. State, 604 So.2d 571, *841 572 (Fla. 4th DCA 1992), this court interpreted Lyles to hold that written reasons for departure are valid when in accordance with the departure grounds announced at sentencing, "provided the departure order is reduced to writing on the same day and filed no later than the business day following sentence." (Emphasis added).
Appellant filed his notice of appeal on Monday, June 15, 1992, one day before the trial court filed appellant's scoresheet. Appellant argues that the filing of the notice of appeal divested the trial court of its jurisdiction over the case. In Davis v. State, 606 So.2d 470 (Fla. 1st DCA 1992), the court vacated the defendant's departure sentence because the trial court was without jurisdiction over the case when it entered its written departure order subsequent to the filing of the notice of appeal. See also Pausch v. State, 596 So.2d 1216 (Fla. 2d DCA 1992) (the notice of appeal divested the trial court of jurisdiction to enter an untimely departure order); Hawryluk v. State, 543 So.2d 1318 (Fla. 5th DCA 1989) (trial judge's rendition of written reasons for departure ineffectual where jurisdiction was vested in appellate court due to the filing of the notice of appeal).
In sum, the trial court reversibly erred in failing to provide contemporaneous written reasons for departure in accordance with Ree because: (1) it failed to file the written reasons by at least the next business day, and (2) it was without jurisdiction to file its written reasons after appellant filed his notice of appeal. Where an appellate court reverses a departure sentence for failure to comply with Ree, the case must be remanded for resentencing with no possibility of departure from the guidelines. Owens v. State, 598 So.2d 64 (Fla. 1992). Accordingly, we reverse appellant's sentence for count two and remand for resentencing within the permitted guidelines' range.

III
Appellant next contends that the trial court reversibly erred in reclassifying the armed burglary charge from a first-degree felony punishable by life to a life felony (for use of a firearm). Count two of the indictment alleged that appellant
[D]id unlawfully enter or remain in a certain dwelling located at 1911 Ave Q, in Ft. Pierce, ... with the intent to commit an offense therein, to wit: ASSAULT, and upon entering said dwelling was armed or did arm himself with a deadly weapon, to wit: a RIFLE, in violation of Florida Statute 810.02(2)(a);
While the indictment charges appellant with armed burglary, a first-degree felony punishable by life, the trial court reclassified the offense to a life felony pursuant to section 775.087(1)(a), Florida Statutes (1991), and listed it as such on appellant's scoresheet and judgment of conviction. Section 775.087(1)(a) provides that a first-degree felony shall be reclassified to a life felony unless otherwise provided by law:
[W]henever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery... .
(Emphasis added).
Section 810.02(2), Florida Statutes (1991), provides that burglary is a felony of the first degree punishable by a term of years not exceeding life imprisonment if, in the course of committing the offense, the offender:
(a) Makes an assault or battery upon any person.
(b) Is armed, or arms himself within such structure or conveyance, with explosives or a dangerous weapon.
While the enhancement statute does not apply when the defendant is convicted of armed burglary pursuant to section 810.02(2)(b) because use of a firearm is an essential element of that crime, it does apply to a conviction for burglary with an assault or battery pursuant to section 810.02(2)(a). Lamont v. State, 610 So.2d 435 (Fla. 1992).
*842 As the state contends, the indictment cites to section 810.02(2)(a) (burglary with an assault or battery). Furthermore, the language utilized on the verdict form indicates that the jury found appellant guilty of that offense.[1] While a conviction for burglary with an assault or battery is subject to the enhancement statute, the language used in the indictment describes the offense of armed burglary as defined in section 810.02(2)(b). The indictment merely alleges that appellant unlawfully entered Ashe's dwelling with the intent to commit an assault while armed. It does not state that appellant actually committed an assault therein. In Zettle v. State, 538 So.2d 121 (Fla. 1st DCA 1989), the defendant was charged by information with attempted first-degree murder and burglary. The jury found him guilty of attempted second-degree murder and burglary with a battery. In reversing the burglary conviction, the court noted that the charging instrument merely charged that the defendant unlawfully entered the victim's home "with the intent to commit an offense therein, to wit: a battery." The court concluded that this language, at most, alleged only second-degree burglary:
For [the defendant] to have been convicted of first degree burglary under Section 810.02(2), Florida Statutes (1987), the information necessarily had to allege that appellant actually committed a battery or that he was armed or that he armed himself while in the structure. Regardless of the fact that appellant actually did commit a battery or that he was armed, the elements necessary for the crime for which appellant was convicted must be alleged in the charging count and cannot be borrowed from other counts of the information.
Id. (emphasis in original). Because the information failed to allege the necessary facts for the first-degree felony, the court held that the first-degree burglary with a battery conviction could not stand. Id.
In the instant case, appellant clearly was charged with first-degree burglary. However, while the information did allege sufficient information to convict appellant of armed burglary pursuant to section 810.02(2)(b), it did not allege that appellant actually committed an assault on Sandra Ashe. The information only alleged that appellant unlawfully entered her home with the intent to commit an assault and "upon entering said dwelling was armed or did arm himself with a deadly weapon." While the indictment does allege the necessary elements for armed burglary, it clearly does not allege the necessary elements for burglary with an assault. Consequently, appellant's conviction for that offense cannot stand.[2]See State v. Gray, 435 So.2d 816 (Fla. 1983) (a conviction cannot rest on an indictment which fails to allege one or more essential elements of the crime). Once this court determines that appellant could only be convicted of first-degree burglary pursuant to 810.02(2)(b), his conviction cannot be reclassified as a life felony pursuant to section 775.087(1)(a) because, as previously mentioned, the use of a weapon is a necessary element of that offense. Accordingly, we reverse the trial court's reclassification of appellant's armed burglary conviction to a life felony and remand with direction that appellant's judgment be corrected to reflect a conviction for first-degree burglary.
We find no merit in appellant's final contention nor the need to discuss it other than to say we conclude the information was sufficient to support the three-year mandatory minimum sentence for use of a firearm.
GLICKSTEIN, C.J., KLEIN, J., and WALDEN, JAMES H., Senior Judge, concur.
NOTES
[1] The verdict form indicates that the jury found that appellant was guilty of "Burglary and in the course thereof committed an assault on Sandra Ann Ashe with a dangerous weapon, to-wit: a firearm, as charged."
[2] Despite the language of the verdict form and the trial court's reclassification to a life felony, appellant's judgment of conviction indicates that he was convicted of "burglary while armed," not burglary with an assault or battery.