927 So.2d 1031 (2006)
Peter MOHR, Petitioner,
v.
STATE of Florida, Respondent.
No. 2D05-2150.
District Court of Appeal of Florida, Second District.
May 10, 2006.
Peter Mohr, pro se.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy A. Freeland, Assistant Attorney General, Tampa, for Respondent.
SALCINES, Judge.
Peter Mohr, in his petition filed pursuant to Florida Rule of Appellate Procedure 9.141(c), raises two grounds alleging ineffective assistance of appellate counsel. We grant the petition as it relates to one of the grounds raised therein, and we deny, without comment, the remaining ground. In the second ground of the petition, Mohr alleged that appellate counsel was ineffective for failing to argue that the trial court reversibly erred in allowing certain portions of Mohr's videotaped interview with the investigating detective to be presented to the jury as evidence. We agree with Mohr's contention, and we conclude that Mohr is entitled to a belated direct appeal on this issue only.
Mohr was convicted, after jury trial, of sexual battery on a person physically helpless to resist. This court affirmed the judgment and sentence. See Mohr v. State, 875 So.2d 614 (Fla. 2d DCA 2004) (table decision). The appendix to the petition contains only a small portion of the trial transcript, and Mohr relies, in part, on the statement of the case and facts contained in the initial brief on direct appeal. The statement of the case and facts indicates that the victim in this case knew Mohr through her husband. On the day in question, with her husband out of town at a wedding, the victim went out drinking and dancing with Mohr and another man named Josh Betts. The three of them then went to the victim's house. Shortly thereafter, Betts left and went home. After vomiting in the bathroom, the next thing the victim remembered was waking up in her bed. Mohr was on top of her with his penis in her vagina. The victim *1032 had not consented to any sexual activity, and she immediately jumped up, got her cell phone, ran out of the bedroom, and called her husband.
Mohr did not testify at trial and, according to the State's response to the petition, when questioned by the trial court after the State rested its case-in-chief, he averred that his videotaped statement to the detective contained everything he would have said had he testified. At trial, the State showed the jury the videotape of the detective's interview with Mohr. The videotape as shown had statements of both the detective and Mohr redacted. The jury was also provided a redacted transcript of the interview to refer to while viewing the videotape. This transcript is included in the appendix to the State's response to the petition.
In the first half of the interview, Mohr told the detective his account of what happened that night. During this time, the detective made a number of one-word comments in response to Mohr's statements. His participation appears to have been designed to encourage Mohr to relate his version of events. Mohr indicated that he and the victim were both intoxicated from drinking alcohol when they engaged in consensual sex. There was kissing and foreplay. Mohr told the detective that the victim was a willing participant and the sex was consensual. When Mohr asked her, the victim said she was sure she wanted to have sex. Mohr stated he would not have engaged in consensual sex with the victim had he not been under the influence of alcohol. According to Mohr's version, about ten minutes after the sexual encounter ended, the victim asked: "What did I do?" Mohr stated: "You know what you did." At this point, the victim told him that she wanted to call her husband and Mohr got the phone for her.
In the second half of the interview, the detective challenged Mohr's version of events, but Mohr stood by his prior statements. At no time did he indicate that the sexual encounter was other than consensual. The detective advised Mohr of what he believed happened. He indicated that he had no doubt the victim was telling the truth and that Mohr was lying. The detective told Mohr that he is a different person when he is drunk and that this was the person who had sex with the victim without her consent. The detective also opined that the victim would not have called her husband had she consented to the sexual encounter.
Prior to trial, Mohr moved in limine to exclude certain portions of the videotaped interview from evidence including the "[p]ersonal views of law enforcement regarding the veracity of the alleged victim," the "personal views of law enforcement regarding the defendant's character," and the "personal views of law enforcement regarding the incident." At the hearing on the motion in limine, Mohr, the prosecutor, and the trial court considered the transcript of the interview.[1] Mohr objected to certain of the detective's statements being admitted into evidence on the grounds that the detective was stating his beliefs regarding what happened; that he was telling the victim's version of events; that he was giving approval to the State's theory; that he was attacking Mohr's character by suggesting that he has a personality disorder and a dual personality; and that the detective was, in essence, making a closing statement to the jury. *1033 Finally, Mohr argued that any probative value of the detective's comments was outweighed by the unfair prejudice to Mohr.
The transcript of the videotaped interview which was provided to the jury to refer to during the playing of the videotape contained the following statements[2] of the detective, none of which were adoptive admissions of Mohr:
You're the nice guy Pete talking to me right now. Last night when you got drunk, you weren't the nice guy Pete. You were the kind of guy that took advantage of her and had sex with her when she could not even think about consenting to you.
. . . .
But, when you get drunk you lose, you lose control Pete. I'm telling you. You lose control. You jump on her and had sex with her. Okay? And she, there was no way in the world she wanted to have sex with you, okay?
. . . .
But you turn into something different when you get shit faced. And that's what you did last night.
. . . .
She did not want to have sex with you last night. She was in no condition to have sex with you last night. Things got out of hand.
. . . .
[The victim] don't, you don't jump up and scream rape and you don't call people and you don't, she didn't even take a piss yet. Never even took a piss because she knows that your semen's going to be inside her.
. . . .
Well, [the victim] was oblivious to what was going on around her then. Because she was in no position to consent to have sex with you. Cause if she was, if she felt the least little bit responsible, there would have never been a phone call. She would a[sic] had to live with it, but she certainly wouldn't a[sic] called her husband back from Jacksonville and all this shit. This shtick would have never happened. She would a[sic] said a mistake like a lot of wives and husbands do when they're out of town or whatever. I'll live with it. It'll be tough. I'll live with it. But she don't jump up and down and start
screaming rape if [s]he's even the slightest bit knowing what's going on.
. . . .
[The victim's] down there getting poked and prodded [emotionally] a thousand different way [sic], which she would not be doing if it happened like you said. If you both made a bad decision, I'm sure that she's an intelligent enough woman that she would say, hey I screwed up and my husband's out of town. Maybe I'll tell him, maybe I won't. But, I'm certainly not going to go through all this stuff. I'm not going to be, you know, she's afraid to even take a piss because she wants, she wants to know that your, your evidence is going to be inside of her.
. . . .
But now you're trying to do something worse by trying to cover it up. Okay? There's no doubt in my mind that you had sex with her while she was passed out, okay? There's no doubt in my mind.
The defendant in Pausch v. State, 596 So.2d 1216, 1218 (Fla. 2d DCA 1992), was convicted, after a jury trial, of second-degree murder and aggravated child abuse. Her son was the victim. See id. at *1034 1217. This court held that Pausch was deprived of a fair trial based on the introduction into evidence of the statements of the investigating detective contained in an interview of the defendant. We noted:
Pausch never admitted responsibility for the death of her son. She simply asserted that Christopher must have fallen to the floor while asleep. [Detective] Bonsall disbelieved her story and accused her of lying, and of abusing her son. Bonsall persistently condemned Pausch as an unfit mother, and predicted that if Christopher returned to her care, she would eventually kill him.
Id. at 1218. The trial court allowed the jury to hear an unedited version of the tape of the interview despite Pausch's objection on the ground of relevancy or, in the alternative, that any slight probative value the tape may have had was substantially outweighed by the prejudicial impact of the detective's remarks. See id. The State argued that the issue was not preserved for appeal. See id. The Pausch court stated: "We agree that Pausch should have advanced a more specific objection to the tape recording, but we nonetheless find that the error fundamentally undermined the fairness of her trial." Id. at 1218. The court concluded that the "introduction of Bonsall's statements was prejudicial, confusing, and misleading." Id. The court further concluded that "the jury in this case could not have reasonably been expected to isolate and extract from the recording that which was admissible as evidence of the crime while disregarding the aspersions of guilt created by Bonsall's words." Id. at 1219. We ordered that "[i]n any subsequent trial of this matter, only those sections of the tape that are relevant and free from the taint of Bonsall's words may be played to the jury." Id.
In the present case, Mohr advanced more specific objections to the statements of the detective than did Pausch. Regardless, in Pausch this court found that the error in admitting the statements fundamentally undermined the fairness of Pausch's trial. Here, the detective, through the admission of his statements in the videotape, advised the jury of his personal belief in Mohr's guilt and his theories as to why Mohr committed the offense and why the victim was telling the truth. He presented his opinion as to the ultimate fact to be decided by the jury. The jury could not reasonably have been expected to disregard the aspersions of guilt created by the detective's words. Appellate counsel's failure to argue that the trial court erred in admitting into evidence the detective's statements, including those cited above as well as other similar statements, constituted deficient performance that undermined confidence in the fairness and correctness of the appeal. See Downs v. Moore, 801 So.2d 906, 909-10 (Fla.2001) (holding that to establish a claim of ineffective assistance of appellate counsel, a petitioner must show that counsel's performance was deficient and the deficiency of the performance compromised the appellate process to such a degree as to undermine confidence in the correctness and fairness of the appeal).
Although we hold that appellate counsel was ineffective in failing to argue that the trial court erred in admitting the statements into evidence, we do not have a sufficient record before us to determine whether the error was harmless. Compare Hernandez v. State, 884 So.2d 281, 282 (Fla. 2d DCA 2004) (holding that our review of the record led us to conclude that the error was not harmless and that granting the petitioner a new appeal would be redundant because we would have been compelled to reverse the petitioner's convictions had appellate counsel raised the issue in the direct appeal); see also Baker v. State, 877 So.2d 856, 858 (Fla. 2d DCA 2004) (awarding the petitioner a new appeal *1035 where the determination as to whether the error was fundamental required a full review of the record on appeal). We, therefore, grant the petition with instructions to the trial court to, within thirty days from the date of the mandate in this case, appoint an appellate attorney to file a brief limited to the issue outlined above. Appellate counsel shall, within thirty days of the appointment, file a new notice of appeal and reference this opinion in the notice of appeal.
The petition is denied in part and granted in part.
WHATLEY and SILBERMAN, JJ., Concur.
NOTES
[1] At the hearing on the motion in limine, the trial court and the parties used the page numbers of a transcript of the interview to refer to certain statements contained therein. The redacted transcript which is included in the appendix to the State's response is paginated differently, and the statements in question do not have the same page designation.
[2] At the hearing on the motion in limine, Mohr objected to these statements being admitted into evidence. Mohr renewed his objections prior to the videotape being played for the jury.