545 So.2d 430 (1989)
Debra RIGGINS, As Personal Representative of the Estate of Levi Riggins, Deceased, Appellant,
v.
MARINER BOAT WORKS, INC., and Mary Ann Mullen, Appellees.
No. 88-02599.
District Court of Appeal of Florida, Second District.
June 14, 1989.
*431 Barry N. Snyder, North Miami Beach, and John P. Cardillo of Monaco, Cardillo & Keith, Naples, for appellant.
Ronald L. Napier, Naples, and John W. MacKay, Tampa, for appellees.
ALTENBERND, Judge.
The personal representative of Levi Riggins appeals a final judgment rendered upon a defense verdict. Mr. Riggins, a pedestrian, was struck and killed by an automobile owned by Mariner Boat Works and operated by Mrs. Mullen. The accident occurred in Naples, Florida, on December 17, 1984, in or near a crosswalk at an intersection controlled by a traffic light. One issue raised by the personal representative requires a reversal of the final judgment and a new trial on all issues. The second issue also involves error. In light of our ruling on the first issue, we do not need to determine the harmfulness of the second error.

I. EXPERT MERELY USED AS CONDUIT FOR INADMISSIBLE EVIDENCE
The defendants attempted to establish that this accident was caused in whole or part by Mr. Riggins' intoxication. The accident occurred at approximately 6 p.m. Mr. Riggins was an estimator for a construction company and had worked on the day of the accident. His boss had noticed nothing unusual about him that day. There was no direct evidence that he had consumed alcoholic beverages after work. At the time of the accident, he was walking to the home of his ex-wife to visit his eight-year-old son. No witness testified that Mr. Riggins appeared intoxicated at the time of the accident or while walking down the sidewalk prior to the accident.
Mr. Riggins was severely injured in this accident and died before he received any significant medical treatment. As a result, no hospital records indicated that Mr. Riggins was intoxicated at the time of the accident. A police officer at the scene of the accident testified that Mr. Riggins had an odor of alcohol on his person. An emergency medical technician who performed CPR upon Mr. Riggins, however, detected no odor of alcohol and neither did another medical technician who examined his body.
During the autopsy, the medical examiner apparently took a sample of Mr. Riggins' ocular vitreous fluid and sent the material to a laboratory to determine its alcohol content. Neither the medical examiner nor the lab technician who performed the alcohol test was available to testify at trial. A sample of the ocular vitreous fluid was utilized because there was not enough blood remaining in the body to obtain a blood sample. The written report from the laboratory indicated an ethanol level of.134% by weight in the ocular vitreous fluid.
The trial court correctly ruled that the laboratory report was inadmissible hearsay. While the document may have been a business record, the defendants did not present evidence to establish the essential elements required for the admission of a business record pursuant to section 90.803(6), Florida Statutes (1987).
After the laboratory report had been excluded, the defendants called a chemical toxicologist. Over objection, the trial court permitted this expert to testify that, at the time the ocular vitreous fluid sample was taken, Mr. Riggins' blood alcohol level was .11%. The chemist rendered this opinion simply by multiplying the results of the inadmissible laboratory report by a standard conversion factor. The trial court permitted this testimony because section 90.704, Florida Statutes (1987), permits an expert to base his opinion upon inadmissible facts or data so long as the "facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed." In this case, the chemist testified that expert toxicologists reasonably rely upon such reports because they cannot render opinions without such reports.
We recognize that experts are generally permitted to express opinions which are based, at least in part, upon inadmissible *432 information.[1]Sikes v. Seaboard Coast Line R.R., 429 So.2d 1216 (Fla. 1st DCA), review denied, 440 So.2d 353 (Fla. 1983); Gomez v. Couvertier, 409 So.2d 1174 (Fla. 3d DCA 1982); Robinson v. Hunter, 506 So.2d 1106 (Fla. 4th DCA), review denied, 518 So.2d 1277 (Fla. 1987). This rule is frequently utilized to permit doctors to base their medical opinions upon tests and laboratory reports which are not admitted into evidence. Bender v. State, 472 So.2d 1370 (Fla. 3d DCA 1985). Another line of cases, however, prohibits the use of expert testimony merely to serve as a conduit to place otherwise inadmissible evidence before a jury. Kurynka v. Tamarac Hosp. Corp., 542 So.2d 412 (Fla. 4th DCA 1989); Smithson v. V.M.S. Realty, Inc., 536 So.2d 260 (Fla. 3d DCA 1988); 3-M Corp.  McGhan Medical Reports Div. v. Brown, 475 So.2d 994 (Fla. 1st DCA 1985); see also Husky Indus., Inc. v. Black, 434 So.2d 988 (Fla. 4th DCA 1983); Ehrhardt, Florida Evidence, § 704.1 (2d ed. 1984).
In this case, the expert's testimony was merely used as a conduit. This is true for several reasons. First, section 90.702, Florida Statutes (1987), permits expert testimony to assist the jury in understanding "a fact in issue." The expert's opinions are not admissible unless the opinions "can be applied to evidence at trial." In this case, the expert was rendering an opinion on blood alcohol content and was relying exclusively upon information which was not evidence at trial. Smithson. The expert opinion only helped the jury to understand the inadmissible document rather than the evidence at trial.
Second, even if one argues that the expert opinion helps the jury to understand the police officer's testimony concerning an odor of alcohol, we do not believe that section 90.704, Florida Statutes (1987), should typically permit an expert to render an opinion exclusively upon inadmissible facts or data. When a doctor renders an opinion based upon an inadmissible laboratory report, that opinion is usually buttressed by additional facts which are in evidence or by an examination of a patient whom the jury has also observed. See Robinson; Bender. In this case, the expert's opinion concerning Mr. Riggins' blood alcohol was not based upon the police officer's report of an odor. The expert could and did render his opinion exclusively on information outside the evidence. While there may be a circumstance in which such an opinion is appropriate, this is not such a case.
Finally, even if the opinion is marginally relevant, it unfairly prejudices the plaintiff and misleads the jury by emphasizing otherwise inadmissible evidence and by placing an aura of scientific truth upon a document which is legally unreliable. Thus, the opinion should have been excluded because its probative value was substantially outweighed by its prejudicial effect. § 90.403, Fla. Stat. (1987); see Johnson v. State, 478 So.2d 885 (Fla. 3d DCA 1985), cause dismissed, 488 So.2d 830 (Fla. 1986); see also Weinstein & Berger, 3 Weinstein's Evidence, § 703[03] p. 703-21 (1987) (recommending that the similar federal rule 703 be analyzed in conjunction with federal rule 403).
The evidence concerning liability and comparative negligence in this case was close. The jury deliberated for many hours before returning its verdict. We find this error to be harmful because it is reasonably probable that a result more favorable to the plaintiff would have been reached if this error had not been committed. See Damico v. Lundberg, 379 So.2d 964 (Fla. 2d DCA 1979).

II. IMPERMISSIBLE CHALLENGE IN CLOSING ARGUMENT
Whether Mrs. Mullen negligently failed to stop at the intersection was a major issue at trial. The plaintiff presented the deposition testimony of three eyewitnesses who testified that Mrs. Mullen ran a red light. It was undisputed at the time of *433 trial that all three witnesses were more than one hundred miles from the place of the trial and that it was appropriate to use their depositions. Fla.R.Civ.P. 1.330(a)(3). The defendants did not object to the use of the depositions and did not require the plaintiff to present evidence of the witnesses' unavailability.
Although the defendants apparently had obtained conflicting statements from these witnesses, the statements were not used to impeach the witnesses during their depositions. The statements were not otherwise introduced into evidence, although their content was generally disclosed to the jury during the testimony of the defendants' accident reconstruction expert.
During his closing argument, the defense attorney questioned the credibility of the three eyewitnesses. He stated that two of the witnesses lived in Naples at the time their depositions were taken, and that the third individual lived in Miami. The defense attorney "challenged" the plaintiff's attorney to tell the jury why the witnesses were not at trial to testify. He argued at length that it was "unfair" to the jurors for the plaintiff to use testimony that he could not subject to cross-examination to "test the truth."
As soon as the defendants' attorney made the challenge, the plaintiff's attorney objected and asked to approach the bench. The trial court required that he make his objection in open court. He explained that the witnesses were subpoenaed and that this was not an evidentiary matter proper for closing argument. The trial court overruled the objection and told the plaintiff's attorney that he could argue the issue during rebuttal. Thus, the plaintiff's attorney was essentially required to testify in his closing argument concerning his efforts to subpoena the witnesses and his legal right to use deposition testimony as though the witness had testified at trial.[2]
While attorneys are given broad latitude in closing arguments, the arguments must be confined to the evidence and to the issues and inferences which can be drawn from the evidence. Alford v. Barnett Nat'l Bank, 188 So. 322, 137 Fla. 564 (1939); Harrold v. Schluep, 264 So.2d 431 (Fla. 4th DCA 1972); Westbrook v. Bacskai, 103 So.2d 241 (Fla. 3d DCA 1958). The law is equally well settled, however, that an improper closing argument will not result in a new trial unless the statements are highly prejudicial, inflammatory, and improper. Decks, Inc. v. Nunez, 299 So.2d 165 (Fla. 2d DCA 1974), cert. denied, 308 So.2d 112 (Fla. 1975). See also Gregory v. Seaboard System R.R., 484 So.2d 35 (Fla. 2d DCA), review denied, 492 So.2d 1334 (Fla. 1986); Albertson's, Inc. v. Brady, 475 So.2d 986 (Fla. 2d DCA 1985), review denied, 486 So.2d 595 (Fla. 1986); Wasden v. Seaboard Coast Line R.R., 474 So.2d 825 (Fla. 2d DCA 1985).
In this case, defense counsel's challenge to his adversary is clearly improper. It is not a comment upon the evidence nor on any inference available from the evidence. Defense counsel could properly comment that the jury would have a more difficult time determining the believability of the deposition witnesses because the jury would not be able to consider the demeanor of those witnesses while testifying. See Fla.Std.Jury Instr. (Civ.) 2.2. When defense counsel, however, challenged his opponent to explain the absence of the witnesses, he was challenging his opponent to either improperly testify in closing argument, or to allude to matters which his opponent knew were unsupported by the evidence. His opponent was not ethically permitted to take either approach. Fla.Bar Rules of Prof.Conduct, Rules 4-3.4, 4-3.7.
Typically, we would not regard these remarks as sufficiently prejudicial or inflammatory to warrant a new trial. In this case, however, the trial court not only overruled the objection, but told the attorney in open court to address the issue in his rebuttal. Thus, the trial court's ruling *434 could only lead the jury to believe that the argument was appropriate and that the deposition testimony was suspect. The evidence which was questioned by the closing argument and the trial court's ruling was vital to the plaintiff's theory of liability. Under these specific facts, the combination of the closing argument and the erroneous ruling may well have been highly prejudicial to the plaintiff. In light of our ruling upon the first issue, however, we do not need to determine whether this error was harmful. Suffice it to say that trial courts should discourage advocates from challenging their opponents to explain matters in closing argument which are outside the evidence and the issues.
Reversed and remanded for a new trial on all issues.
CAMPBELL, C.J., and RYDER, J., concur.
NOTES
[1] For example, it would be appropriate for an expert toxicologist to use and rely upon a standard conversion factor obtained from a treatise while explaining the evidence in a case, if toxicologists reasonably rely upon such hearsay information.
[2] Although both parties made extensive use of deposition testimony, it does not appear that either party requested or that the trial court gave Florida Standard Jury Instruction (Civil) 1.3.