695 So.2d 452 (1997)
Jessica SCHWARZ, Appellant,
v.
STATE of Florida, Appellee.
No. 95-3171.
District Court of Appeal of Florida, Fourth District.
June 4, 1997.
Rehearing Denied June 27, 1997.
*453 Glenn H. Mitchell, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, Judge.
Jessica Schwarz was charged with second degree murder, as well as child abuse and other offenses, after her ten year old stepson, Andrew, was found dead in the family pool. She waived her right to a jury trial on the murder charge, which was severed from the other charges, and was found guilty of second degree murder by the court. We affirm her conviction.
We address two issues: whether there was sufficient evidence for a conviction, and whether the pathologist who testified about the cause of death could testify, on direct examination, that he had consulted with other pathologists about the cause of death.
Defendant's husband found Andrew dead in the family swimming pool around 6:30 a.m. He was nude, and his body was covered with bruises. The pool was less than four feet deep, and Andrew, who was taller than that, was a good swimmer. Defendant, who would normally have slept late on Sunday, the morning that Andrew's death was discovered, awakened her husband around 6:00 a.m. when she couldn't find Andrew.
In her trial, defendant's counsel attempted to show that Andrew's death was either a suicide, an accident, or that defendant's husband, Andrew's father, murdered him. She argues that the largely circumstantial evidence *454 of her involvement was insufficient, and that the court should have granted her motion for judgment of acquittal.
Although Andrew's life had been made miserable by the defendant, who had abused him physically and mentally on many occasions, the pathologist who performed an autopsy on Andrew, Dr. Burton, testified that "there's a medical certainty that this is not a suicide." Dr. Burton testified that Andrew had bruises on his buttocks, the insides of his thighs and one arm, and in the small of the back, none of which could have resulted from falling down. He also had other soft tissue injuries, including to his lip and cheek. More specifically, he had lacerations behind each ear almost in the same place, which were consistent with pressure from fingers having forced him into the pool and holding him underwater.
The State produced seventeen witnesses who testified about defendant's physical and mental abuse.[1] In addition, one witness testified that defendant had told her one or two years prior to Andrew's death that she did not know what to do with Andrew and that she was going to kill him. When this witness tried to persuade the defendant that she did not really mean that, the witness testified that the defendant asserted decisively that she was going to do it. During the night of Andrew's death, a neighbor heard a child's voice say "I won't do it again, I won't do it again" and then heard a "muffled crying type noise." Other witnesses testified that they had heard defendant say that she hated Andrew, that he was basically "no good."
Dr. Burton testified that there was every likelihood that this was a homicide, and that he "felt very strongly that it probably" was a homicide.
The State is not, as defendant argues, required to rebut every possible scenario which could be inferred from the evidence. Rather it must introduce competent evidence which is inconsistent with the defendant's theories. State v. Law, 559 So.2d 187 (Fla. 1989). We find that there was ample evidence introduced by the State which was inconsistent with the defendant's theories of suicide, accident, or murder by Andrew's father, and ample evidence that she did commit the crime.
Defendant also argues that Dr. Burton, the State's expert forensic pathologist, should not have been able to testify that he had discussed the case with other pathologists in his field. Dr. Burton, who specializes in forensic pathology, is the chief medical examiner for five counties in the metropolitan Atlanta area. He testified that when he gets involved in an unusual case he does not rely solely on his own opinions, but regularly consults other pathologists. In this case he consulted two pathologists on his staff, and three others from Pennsylvania, South Carolina and Miami, Florida, and so testified over defendant's objection.
The precise issue raised by defendant's objectionwhether experts can testify that they discussed the case with other experts in the same field in order to arrive at their opinionis one on which we find no precedent. We do know that experts can rely, in forming their opinions, on information which is not itself admissible, under section 90.704, Florida Statutes (1995), which provides:
The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, the expert at or before the trial. If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence.
The purpose behind the adoption of this statute as part of our evidence code was to allow experts to use information when rendering an opinion in court, just as they would rely on opinions of, for example, nurses, technicians, other physicians, and hospital records, when they are rendering opinions out of court. Law Revision Council Note (1976), 6C Fla. Stat. Ann. § 90.704, at 216 (1979).
Our statute is modeled after Federal Rule of Evidence 703. Under the federal *455 statute, as well as our statute, experts may testify as to the things on which they rely. Bender v. State, 472 So.2d 1370 (Fla. 3d DCA 1985) (citing, 3 J. Weinstein & M. Berger's Weinstein's Evidence ¶ 703[03] (1982)).
In Bender the trial court had precluded the defendant from having his expert psychiatrist testify as to the results of a C.A.T. scan, on which the expert relied in diagnosing the defendant's organic brain syndrome, and the third district reversed for a new trial. We agree entirely with the analysis of the third district in Bender. The present case, however, differs from Bender and the cases cited therein, in that the expert in the present case consulted with other experts in his same specialty. Defendant argues that allowing this permits experts to improperly bolster their own opinions.
Experts cannot, on direct examination, bolster their testimony by testifying that a treatise agrees with their opinion. Chorzelewski v. Drucker, 546 So.2d 1118 (Fla. 4th DCA 1989), Quarrel v. Minervini, 510 So.2d 977 (Fla. 3d DCA 1987), Tallahassee Memorial v. Mitchell, 407 So.2d 601 (Fla. 1st DCA 1981). Nor are statements in a treatise admissible during the direct examination of an expert, Green v. Goldberg, 630 So.2d 606 (Fla. 4th DCA 1993), although they can be used on cross-examination of an expert. § 90.706, Fla. Stat.
Consistent with Florida cases holding that experts cannot bolster their opinions with treatises are cases from other jurisdictions holding that experts cannot bolster or corroborate their opinions with the opinions of other experts who do not testify. C.S.I. Chem. Sales, Inc. v. Mapco Gas Prod., Inc., 557 N.W.2d 528 (Iowa App.1996), Kim v. Nazarian, 216 Ill.App.3d 818, 159 Ill.Dec. 758, 576 N.E.2d 427 (1991), Todd v. Williams, 242 Va. 178, 409 S.E.2d 450 (1991). Such testimony improperly permits one expert to become a conduit for the opinion of another expert who is not subject to cross-examination. Hutchinson v. Groskin, 927 F.2d 722 (2d Cir.1991), and C.S.I. Chem. Sales.
The precise issue before us is not whether Dr. Burton could testify that other experts in his field agreed with him, but rather whether he could testify that he had consulted other experts in his same field. In the absence of any persuasive authority to the contrary, we conclude that Dr. Burton should not have been permitted to do so. There is too much of a possibility of an inference being drawn that these experts agreed with Dr. Burton. Any probative value would be "substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury..." § 90.403, Fla. Stat. Accordingly, while there was nothing improper about Dr. Burton consulting with other experts in his field, he should not have been allowed to testify that he did so on direct examination.
Defendant also argues that we should reverse because Dr. Burton commented, not in response to a question, that one of the experts he consulted, Dr. Davis, was "probably the best forensic pathologist that I have known and I think that he's best that there probably has ever been."
Experts cannot testify about the credibility of other experts. Carver v. Orange County, 444 So.2d 452 (Fla. 5th DCA 1983) and Schwab v. Tolley, 345 So.2d 747 (Fla. 4th DCA 1977). If defense counsel had made that objection, it would have been well taken. His only objection, however, which was that the comment was self-serving, was not well taken, because self-serving statements are not per se inadmissible. Business records, for example, are frequently self-serving; however, that fact does not make them inadmissible. The self-serving objection was insufficient to make this trial judge aware of why the comment was improper. See Ehrhardt, Florida Evidence § 803 (1996 Ed.). This error was therefore not preserved. Nor were errors preserved in regard to other aspects of Dr. Burton's testimony about which defendant now complains.
We have carefully considered the error which was preserved, regarding Dr. Burton's stating that he had consulted with other experts in his same field, and have concluded that the error was harmless under the facts in this case. As we said earlier, our holding that it is inadmissible rests on the ground that its relevance is outweighed by possible prejudice, in that it could be inferred that *456 other nontestifying experts agreed with him. The possibility of that inference being drawn and resulting in prejudice would have been substantially higher had this been a jury trial. In this nonjury trial, however, the trial judge was well aware of the weight to be given this testimony, and we are satisfied that it was harmless under State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
We have considered the other issues raised by defendant and find them to be without merit.
Affirmed.
PARIENTE and SHAHOOD, JJ., concur.
NOTES
[1] Although the child abuse charges were severed, this evidence was relevant to show that Andrew died as a result of an intentional act. Pausch v. State, 596 So.2d 1216 (Fla. 2d DCA 1992); Mayberry v. State, 430 So.2d 908 (Fla. 3d DCA 1982).