894 So.2d 974 (2004)
Beth LINN and Anthony Linn, Appellants,
v.
Basil D. FOSSUM, M.D. and Dennis M. Lewis, M.D., Appellees.
No. 1D03-4152.
District Court of Appeal of Florida, First District.
October 18, 2004.
Rehearing Denied December 20, 2004.
*975 Major B. Harding, Martin B. Sipple and Jennifer M. Heckman of Ausley & McMullen, Tallahassee, for Appellants.
S. William Fuller, Jr., and William D. Horgan of Fuller, Johnson & Farrell, P.A., Tallahassee, for Appellee Basil D. Fossum, M.D.
No appearance for Appellee Dennis M. Lewis, M.D.
PADOVANO, J.
The plaintiffs, Beth and Anthony Linn, appeal from a final judgment entered for the defendant, Dr. Basil Fossum, in a medical malpractice case. They contend that testimony given by the defendant's medical expert should not have been admitted in evidence, because it was based entirely on the hearsay statements of other doctors. We conclude that the opinion testimony at issue was based in part on the expert's own assessment of the medical condition in question and that it was properly admitted. Therefore, we affirm.
The claim against Dr. Fossum was that he failed to diagnose an injury caused by Dr. Dennis Lewis, a general surgeon. Dr. Lewis had performed a diagnostic laparoscopy on Beth Linn to determine the cause of her abdominal pain. In the course of this procedure, Dr. Lewis accidentally cut Mrs. Linn's ureter, causing urine to leak into her abdomen. Mrs. Linn was subsequently treated by Dr. Fossum, who failed *976 to diagnose the leak. Eventually, the leak caused a painful infection.
Before trial, the plaintiffs took the deposition of Dr. Dana Weaver-Osterholtz, the expert witness for the defense. Dr. Weaver-Osterholtz stated that in her opinion Dr. Fossum had complied with the applicable standard of care in attempting to identify the cause of Mrs. Linn's injury. She explained that Dr. Fossum had "performed all the tests that are normally performed by a urologist under the circumstances." She added however, that she would apply a more rigorous standard to herself, because she works in a tertiary care unit and is often required to treat injuries to the ureter. She said that if she had been treating Mrs. Linn, she would have stented the leak and drained her urinary system.
Dr. Weaver-Osterholtz stated that her opinion was based on her review of Mrs. Linn's medical records, the depositions of various other witnesses, her own experience and medical training, and a brief conference she had with several other urologists. These urologists were not witnesses in the trial, nor did they testify. Dr. Weaver-Osterholtz said that she had presented Mrs. Linn's case to her fellow physicians in a hypothetical "curb-side consult," and they all agreed that Dr. Fossum had met the standard of care.
After the deposition, the plaintiffs filed a motion to exclude the testimony Dr. Weaver-Osterholtz was prepared to give regarding the standard of care. They argued that her proposed testimony was a conduit for the inadmissible hearsay opinions of the other doctors and, as a part of this argument, they emphasized that her personal standard of care differed from that she intended to apply to Dr. Fossum at trial. The trial court denied the motion.
The plaintiff's expert, Dr. Carlos Santa Cruz, testified at trial that Dr. Fossum had breached the applicable standard of care. Dr. Weaver-Osterholtz was called as a defense witness to counter this opinion. On direct examination she was asked how she had determined the appropriate standard of care applicable to Dr. Fossum in Mrs. Linn's case. At that point, the plaintiffs renewed their objection. Defense counsel said that he would not ask Dr. Weaver-Osterholtz to relay the substance of the conversations with the other doctors, and the trial court overruled the objection. Dr. Weaver-Osterholtz then testified that she had presented the case to various urologists, but she did not testify on direct examination to what they said, the substance of their opinions, or whether their opinions supported Dr. Fossum's course of action.
On cross-examination, the plaintiffs questioned Dr. Weaver-Osterholtz about her conversations with these other doctors. In an attempt to impeach Dr. Weaver-Osterholtz with her deposition testimony, they asked whether her conferences with the other urologists were the basis for her opinion that Dr. Fossum's watch-and-wait approach was within the applicable standard of care. She replied that it was one of the bases for her opinion and that the other bases included a review of Mrs. Linn's medical records, witness depositions, and pertinent literature, as well as her own education, training and experience.
The jury returned a verdict for Dr. Fossum and, following the denial of post-trial motions addressed to the admissibility of the disputed expert testimony, the trial court entered a judgment in his favor. The plaintiffs filed this appeal to seek review of the judgment.
We begin with the proposition that an expert witness may render an opinion that is based in part on inadmissible evidence. See Houghton v. Bond, 680 *977 So.2d 514, 522 (Fla. 1st DCA 1996); Sikes v. Seaboard Coast Line R.R. Co., 429 So.2d 1216, 1222 (Fla. 1st DCA 1983). This general principle is incorporated into the Florida Evidence Code in the following language:
The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, the expert at or before the trial. If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence.
§ 90.704, Fla. Stat. (2003). The purpose of this section is to enable experts to reach their opinions and explain them in the manner in which they would in their own offices and laboratories. See Charles W. Ehrhardt, Florida Evidence § 704.1 (2004).
Section 90.704 enables a party to present an expert opinion that is based in part on a hearsay statement, even if the statement would not be admissible in evidence in its own right. If experts in a particular discipline customarily rely on hearsay to some extent in formulating a professional opinion, then it would be proper to allow an expert witness in that discipline to render an opinion that is based in part on hearsay. See Carratelli v. State, 832 So.2d 850, 861-862 (Fla. 4th DCA 2003). As the court explained in Bender v. State, 472 So.2d 1370, 1372 (Fla. 3d DCA 1985), the rule allowing an expert witness to consider hearsay statements in rendering an opinion came about because "the traditional constraints of the hearsay rule do not, in many instances, comport with the reality that expert opinions are based on other than first-hand observation."
The testimony at issue in this case is an opinion regarding the proper standard of medical care. According to section 766.102(1), Florida Statutes, the prevailing standard of care for a health care provider is "that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." This subject, by its nature, requires an understanding of what other experts in the field consider appropriate. A doctor would have to communicate in some way with other health care professionals to know what they regarded as "acceptable and appropriate."
The fact that Dr. Weaver-Osterholtz spoke with other urologists in a setting she described as "curbside consult" does not lead us to conclude that her opinion was inadmissible. It is proper for an expert witness to consult with other experts in the same field in formulating an opinion. See, e.g., Bender; Capehart v. State, 583 So.2d 1009 (Fla.1991); see also Lewis v. Rego Co., 757 F.2d 66 (3d Cir.1985); United States v. Brown, 299 F.3d 1252, 1257 (11th Cir.2002) (interpreting the federal rules). And this is particularly true in the health care field, given the statutory definition of the standard of care. We would expect a doctor to speak with other doctors in the same field, either in connection with a particular case or in a more general setting. Otherwise, it would be difficult to know the proper standard of medical care as defined by law.
The plaintiffs acknowledge these general principles of law, but they contend that the opinion in this case should have been excluded from evidence, because it was based exclusively on the hearsay statements of the other urologists. They contend that Dr. Weaver-Osterholtz was merely a conduit for the hearsay statements made by the other doctors and that *978 they were deprived of an opportunity to cross-examine any of these doctors.
It is true that section 90.704 does not authorize the admission of an opinion that is based exclusively on inadmissible evidence. See Maklakiewicz v. Berton, 652 So.2d 1208, 1209 (Fla. 3d DCA 1995). However, there is no impediment to the admission of an opinion that was based partly on inadmissible facts or data and partly on other information that is admissible. When that is the case, the expert opinion is properly buttressed by the admissible information. See, e.g., Riggins v. Mariner Boat Works, Inc., 545 So.2d 430, 432 (Fla. 2d DCA 1989) (observing that, "[w]hen a doctor renders an opinion based upon an inadmissible laboratory report, that opinion is usually buttressed by additional facts which are in evidence or by an examination of a patient whom the jury has also observed."); Capehart v. State, 583 So.2d 1009, 1012-1013 (Fla.1991); Carratelli, 832 So.2d at 861-862.
The question, then, is whether the opinion given by Dr. Weaver-Osterholtz at trial was based entirely on the hearsay statements of the other urologists. Our review of the record convinces us that it was not. As she stated in her testimony, Dr. Weaver-Osterholtz reviewed Mrs. Linn's medical records for approximately ten hours, as well as the deposition testimony of other witnesses in the case. In addition, she relied on her own medical education, training and experience in forming her opinion. The consultation with her colleagues was only a part of the basis for her opinion that Dr. Fossum complied with the standard of care.
The plaintiffs rely heavily on Dr. Weaver-Osterholtz's statement that she herself had a different standard of care and would have stented the leak rather than adopting a watch-and-wait approach. They argue that this testimony shows that Dr. Weaver-Osterholtz relied exclusively on the opinions of the other doctors in forming her opinion that Dr. Fossum met the applicable standard of care in treating Mrs. Linn. This argument is also unsupported by the record. Dr. Weaver-Osterholtz testified that the other doctors' opinions were only one factor she considered in formulating her opinion about the standard of care.
For example, on direct examination, Dr. Weaver-Osterholtz explained that one of the other factors on which she based her opinion that Dr. Fossum had met the standard of care was the fact that the type of ureteral leak Mrs. Linn had was "notoriously hard to diagnose." She pointed out that the symptoms are "vague," "very subtle and sometimes very hard to pick up." She further explained that "the tests [used to diagnose such leaks] are inaccurate" with only about a 33% accuracy rate, delaying the diagnosis of ureteral leaks most of the time. She also noted that the difficulty in diagnosing Mrs. Linn's leak was compounded by her long history of preexisting abdominal pain. As Dr. Weaver-Osterholtz explained, Mrs. Linn had long been debilitated by her chronic abdominal pain, so much so that she had previously had a hysterectomy to try to alleviate it and a laparoscopy to determine the cause of the pain.
Moreover, the personal standard that Dr. Weaver-Osterholtz would apply to herself is not the standard to be applied in determining medical negligence. As we have explained, the standard of care is the level of care that is recognized as acceptable and appropriate by reasonably prudent health care professionals. See § 766.102(1), Fla. Stat. (2003). Dr. Weaver-Osterholtz held herself to a higher standard than she would apply to urologists working in less specialized environments, but that is not a matter of any *979 significance here. The question is not whether Dr. Fossum met the high standard Dr. Weaver-Osterholtz set for herself, but whether he met the standard for reasonably prudent doctors working in the same field. Dr. Weaver-Osterholtz thought that he did and we have no reason to question her opinion on this point.
In his dissent, Judge Kahn argues that our decision conflicts with the decision of the Fourth District Court of Appeal in Schwarz v. State, 695 So.2d 452 (Fla. 4th DCA 1997). There, a medical examiner testified on direct examination that he had consulted with another doctor who agreed with him about the substance of his opinion. He explained that the issue was unusual and he wanted to see what someone else thought about it. The argument in Schwarz was not that the medical examiner based his opinion on hearsay, but rather that he was allowed to bolster his opinion by implying that others experts agreed with him. The court reasoned that, if it is improper to allow an expert to refer to a treatise on direct examination, it must also be improper to allow the expert to refer to conversations with other experts about the issue at hand. Ultimately, the court affirmed the conviction on the ground that the error was harmless.
There are two critical differences between this case and Schwarz. First, the plaintiffs in this case are not arguing that Dr. Weaver-Osterholtz improperly bolstered her testimony. This point was not made in the trial court, nor was it made in this court. The appellants mentioned the alleged improper bolstering in passing in their initial brief, but it was clearly not the thrust of their argument. Nor could it have been. The argument was that Dr. Weaver-Osterholtz's opinion was based entirely on hearsay. It would be difficult to argue that Dr. Weaver-Osterholtz tried to bolster her opinion with the opinions of experts when she said from the beginning that she applied a different standard of care for herself and that she did not personally share the views of the doctors she consulted.
The second major difference is that Dr. Weaver-Osterholtz did not testify on direct examination that other experts agreed with the opinion she was about to give. She said that she had consulted with other doctors, but this was in response to a question about what she had done to determine the standard of care. Presumably, a doctor would have to know a great deal more about the facts to know whether the standard was met in a given case. The opinions of the other doctors were eventually revealed during the plaintiffs' cross-examination and attempted impeachment of Dr. Weaver-Osterholtz, but we hardly think this makes the case comparable to Schwarz.
We think that our opinion is consistent with the analysis in Schwarz, but we would have no basis to certify conflict in any event. Article, V, section 3(b)(4) of the Florida Constitution provides that the supreme court may review a decision of a district court of appeal that "is certified by it to be in direct conflict with a decision of another district court of appeal." (Emphasis added). Here, the decisions are not even arguably in conflict. Both were affirmances. At most, according to the dissent in the present case, the reasoning is different. We do not share that view, but even if we did, it would not be a basis to certify conflict.
For these reasons, we conclude that the trial court did not err in admitting the opinion testimony of Dr. Weaver-Osterholtz. Her opinion was not merely the conduit for the hearsay statements of other doctors, as the plaintiffs contend.
Affirmed.
*980 DAVIS, J., concurs.
KAHN, J., dissents with opinion.
KAHN, J., dissenting.
Appellants Beth and Anthony Linn seek review of a final judgment, based upon a jury verdict and entered in favor of appellees Dr. Basil D. Fossum and Dr. Dennis M. Lewis. Appellants urge error in the trial court's admission of certain opinion testimony from Dr. Fossum's expert witness, Dr. Dana Weaver-Osterholtz. Because the germane portion of Dr. Weaver-Osterholtz' opinion testimony served only as a conduit for otherwise inadmissible evidence, we should reverse the judgment on appeal and remand this case for a new trial. I, therefore, dissent.

Background
In the complaint brought in this medical negligence case, appellants alleged that Dr. Fossum negligently failed to diagnose a urine leak that resulted when Beth Linn's ureter was cut or damaged during an operation. One week after the operation, Beth Linn felt severe pain in her abdomen and entered Twin Cities Hospital in Niceville, Florida. Dr. Fossum provided treatment during that hospital admission. Appellants argue that Dr. Fossum negligently failed to diagnose the urine leak as the source of Mrs. Linn's pain and ultimate infection and complications. After four days at Twin Cities Hospital, the Linns traveled to Atlanta, where physicians at Emory University Hospital diagnosed and repaired the leak.
During the Twin Cities Hospital admission, a renal ultrasound and a nuclear medicine renal scan revealed "extensive fluid present above the bladder." The radiologist who reviewed these studies raised the possibility of a "cut ureter." At that point, Dr. Fossum, a urologist, ordered a bilateral retrograde pyelogram. Dr. Fossum interpreted the results of the pyelogram as negative and, based upon his reading of that test, performed no further studies to resolve the possible inconsistency between the initial radiology studies and the negative pyelogram. Although the Linns sought further tests on an outpatient basis, no additional tests or examinations came about at Twin Cities Hospital.
Frustrated, the Linns traveled to Atlanta where an emergency room physician at Emory University Hospital ordered a CT scan. That test showed a large fluid collection in the lower abdomen, highly suggestive of a right ureter injury. An Emory physician then ordered a bilateral retrograde pyelogram, the same test performed days earlier by Dr. Fossum. As a result of this test, the physician in Atlanta diagnosed the injury to Beth Linn's ureter and inserted a stent. Despite resulting infection and attendant complications, Mrs. Linn's condition ultimately resolved.
As correctly acknowledged in the majority opinion, the central issue in this case involves opinion testimony offered by Dr. Weaver-Osterholtz on the appropriate standard of urological care. Dr. Weaver-Osterholtz testified on deposition that, based upon her review of medical records from Twin Cities, the urine leak was "apparent." Dr. Weaver-Osterholtz would not have adopted the "watch and wait" approach of Dr. Fossum and, instead, would have inserted a stent to drain the fluid based upon the initial radiological tests.
Despite enunciation of her personal standard of care, Dr. Weaver-Osterholtz proposed to testify at trial that Dr. Fossum did not deviate from the applicable standard. On direct examination, defense counsel elicited Dr. Weaver-Osterholtz' opinion testimony in the following manner:

*981 Q. At my request, have you reviewed some records in this case involving a patient by the name of Beth Linn?
A. Yes. I've reviewed a lot of records.
Q. And a lot of depositions?
A. A lot of depositions.
Q. Okay. And in that review, I had asked you to render some opinions regarding "standard of care"; did I not?
A. Correct.
Q. And in order to give those opinions about the "standard of care" in this particular case, what, if anything, did you do to try to determine the appropriate standard of care for this case as it applies to my client, Dr. Fossum?
[Plaintiffs' objection to "any hearsay and use of this witness as a conduit for hearsay from other physicians."]
By Mr. Fuller:
Q. Do you understand my question?
A. Yes. What I did was I presented the case in a several  in a couple of different forums. One is to five private practice urologists, and they varied from having experience of three years to  well, three years to 25 years of experience. And then I also presented it at the University of Missouri that has five staff and their experience varies from a couple of years to as many as 40 years.
Q. And based upon that determination of what the appropriate standard of care is for this case, did you come to an opinion as to whether Dr. Fossum met the standard of care?
[Plaintiffs' renewed objection]
A. Can you state the question again?
By Mr. Fuller:
Q. Yes. Based on your determination of what the appropriate standard of care is for this case, do you have an opinion, within a reasonable medical probability, as to whether what Dr. Fossum did met that standard of care?
A. Yes, I do, and he met the standard.
(Emphasis added). At the conclusion of direct examination, Dr. Weaver-Osterholtz reiterated her opinion that Dr. Fossum's treatment was appropriate and reasonable.
On cross-examination, Dr. Weaver-Osterholtz agreed that the opinion she gave regarding standard of care was based upon a presentation of the case to several other doctors. She further agreed that she had characterized this presentation as a "curb-side consult." The presentation lasted two or three minutes during which she told the other doctors about the case, showed them the x-rays, and asked for questions and discussion. During the course of the presentation to the other unnamed physicians, Dr. Weaver-Osterholtz utilized no other medical records or depositions, nor did she make any notation of comments made by the consulting physicians. Although Dr. Weaver-Osterholtz testified that, in arriving at her opinion on standard of care, she utilized "the literature" and "the depositions," she identified no source for her ultimate opinion on standard of care other than her informal presentation to several unnamed physicians. It appears that defense counsel recognized this because, in a direct examination question, he referred to Dr. Weaver-Osterholtz' presentation to the other physicians as "that determination of what the appropriate standard of care is for this case." By motion in limine and contemporaneous trial objections, appellants preserved their right to seek review of the trial court's evidentiary ruling allowing Dr. Weaver-Osterholtz to testify on standard of care.

Analysis
Appellants argue that because Dr. Weaver-Osterholtz' opinion concerning *982 standard of care was based entirely upon her presentations to several unnamed colleagues, admission of her testimony was clear error. The Linns acknowledge that under section 90.704, Florida Statutes, the facts or data relied upon by an expert need not be admissible in evidence if "the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed." Dr. Fossum urges that under section 90.704, the expert testimony in this case was perfectly admissible, even though the actual statements of Dr. Weaver-Osterholtz' colleagues would have themselves been inadmissible hearsay. Florida law is not consonant with Dr. Fossum's view of section 90.704.
Much of the discussion of the issue goes back to this court's decision in Sikes v. Seaboard Coast Line Railroad Co., 429 So.2d 1216, 1222-23 (Fla. 1st DCA 1983). The accident reconstruction expert in Sikes presented testimony based upon depositions of the victim's son, "train personnel, statements of apparently disinterested witnesses, surveys of the accident site, two visits to the site, pictures of the site and a homicide report, among others." Id. at 1222. The trial court overruled an objection that the expert was testifying based on information not in evidence. Citing section 90.704, Florida Statutes, this court found no error in admission of the expert's testimony. Nevertheless, the court made a statement that should control the present case:
Obviously, standing alone, this is not the type of evidence upon which an accident reconstructionologist should pin his opinion. The expert's opinion in the instant case was founded upon far more than conversations with a purported bystander.
Id. at 1223. By quite straightforward analogy, the rule in Sikes is that under section 90.704, an expert may not pin an opinion solely upon inadmissible evidence. See Kloster Cruise Ltd. v. Rentz, 733 So.2d 1102, 1103 (Fla. 3d DCA 1999) (allowing expert opinion where the underlying data, although not independently admissible, "was the beginning point for analysis, but some further analysis was required by the expert in order to apply the data").
In Gerber v. Iyengar, the trial court allowed a defense causation witness to testify about an out-of-court conversation with another medical doctor. 725 So.2d 1181, 1183 (Fla. 3d DCA 1998). Specifically, after acknowledging the authoritativeness of a certain textbook, and further acknowledging that a portion of the textbook conflicted with the witness's trial testimony, the witness was allowed to explain to the jury that he had private conversations with the textbook author and that the author did not mean exactly what he wrote in the textbook. Id. The Third District viewed the out-of-court statements made by the textbook author to the defense witness as "inadmissible hearsay." Id. at 1185. Acknowledging that the evidence code allows an expert witness to render an opinion premised upon inadmissible evidence, the court nevertheless reiterated that such a witness may not serve as a conduit for the presentation of inadmissible evidence. See id. Citing numerous cases, the court expressed its concern that the out-of-court statement by the textbook author "was presented for the jury's consumption without affording [plaintiff] an opportunity to cross-examine." Id.
A case relied upon by the Gerber court is analogous to the present situation. In Maklakiewicz v. Berton, the court disallowed opinions of a police officer testifying as an reconstruction expert. 652 So.2d 1208, 1209 (Fla. 3d DCA 1995). The objection was not that the officer lacked qualifications, but rather that the "officer's conclusions would be inadmissible hearsay *983 accounts of the incident." Id. In Maklakiewicz, even though the officer physically inspected the accident scene, it also was clear from the officer's testimony "that he would be unable to render an opinion with finality without relying on the hearsay statements." Id. Accordingly, the Third District found the officer's conclusion as an expert was based on inadmissible evidence and reversed. See id.
Other cases confirm that, despite section 90.704, an expert opinion may never be based exclusively upon inadmissible facts or data. As the Second District has explained, the statute is "frequently utilized to permit doctors to base their medical opinions upon tests and laboratory reports which are not admitted into evidence." Riggins v. Mariner Boat Works, Inc., 545 So.2d 430, 432 (Fla. 2d DCA 1989). Nevertheless, the case law "prohibits the use of expert testimony merely to serve as a conduit to place otherwise inadmissible evidence before a jury." Id. As the court concluded, section 90.704, does not "typically permit an expert to render an opinion exclusively upon inadmissible facts or data." Id.
In the present case, Dr. Weaver-Osterholtz certainly could have utilized otherwise inadmissible medical records to support her opinion concerning standard of care. Such is not really subject to controversy. The rule, however, is not broad enough to encompass a situation, as occurred here, where the expert merely quotes the findings of other physicians, which would be hearsay if they were offered for their truth. See Ross Dress for Less, Inc. v. Radcliff, 751 So.2d 126, 127 (Fla. 2d DCA 2000); see also Bunyak v. Clyde J. Yancey & Sons Dairy, Inc., 438 So.2d 891, 893 (Fla. 2d DCA 1983) (holding that expert witnesses are prohibited from relating opinions given to them by other experts).
The Fourth District has also delineated the appropriate scope of section 90.704. In Schwarz v. State, the appellant argued that the State's expert forensic pathologist should not have been able to testify that he discussed the case with other pathologists in his field who agreed with him. 695 So.2d 452, 454 (Fla. 4th DCA 1997). The Fourth District drew what becomes the critical distinction here. Under section 90.704, an expert may use various sorts of information when rendering an opinion in court, just as such an expert would do in the normal course of practice, when rendering opinions out of court. See id. Such a rule does not, however, permit experts to improperly bolster opinions by use of inadmissible evidence. See id. at 455. In reaching this conclusion, the Fourth District looked at cases prohibiting experts from bolstering their testimony by testifying that a particular treatise agrees with their opinion. See id.; see also Chorzelewski v. Drucker, 546 So.2d 1118 (Fla. 4th DCA 1989); Quarrel v. Minervini, 510 So.2d 977 (Fla. 3d DCA 1987); Tallahassee Mem'l Reg. Med. Center v. Mitchell, 407 So.2d 601 (Fla. 1st DCA 1981). Consistent with such cases, the court explained "[E]xperts cannot bolster or corroborate their opinions with the opinions of other experts who do not testify. Such testimony improperly permits one expert to become a conduit for the opinion of another expert who is not subject to cross-examination." Schwarz, 695 So.2d at 455 (citations omitted).
The rule established by the foregoing cases is brought into sharp focus by the present matter. Dr. Weaver-Osterholtz testified, rather unequivocally, that her standard of care would have been quite different from that utilized by Dr. Fossum. She would have been much more aggressive and would have placed a stent in the ureter, upon review of the radiology studies. She based her general standard of care opinion, however, not upon her own *984 practice and experience, but exclusively upon out-of-court statements made by certain other physicians to whom she presented the case. Although appellee Fossum urges that Dr. Weaver-Osterholtz utilized "other bases," including the medical records, depositions, and the pertinent literature, neither he, nor the majority, can identify any source for Dr. Weaver-Osterholtz' ultimate opinion on standard of care, other than statements made by the unnamed physicians who participated in Dr. Weaver-Osterholtz' presentations.
With respect to the majority opinion, the statement that Dr. Weaver-Osterholtz' consult with her colleagues "was only a part of the basis for her opinion" is incorrect. Op. at 978. Although the doctor's expertise was based upon training, experience, and standing in the field, and she undoubtedly reviewed medical records, she, like the officer in Maklakiewicz, based her ultimate opinion only on the undisclosed statements made by other physicians. Under the standard adopted by the majority, any physician who qualifies as an expert in the field may obtain opinions from random colleagues, which will then be admissible in a Florida medical malpractice trial, so long as the expert physician testifies that she has reviewed the patients' records. Such represents a radical departure from the conduct of trials in this State.

Conclusion
I conclude that section 90.704 is a practical rule that allows experts testifying in court to utilize the same sort of information they would utilize in the regular course of their practice. Such information would include medical records, literature, and, when utilized as simply a part of the whole picture, consultations with other experts. The problem arose here because the expert's ultimate opinion relied only upon the opinions of other physicians. Accordingly, this testimony should have been excluded as based "exclusively upon information which was not evidence at trial." Riggins, 545 So.2d at 432. Despite unquestioned expertise and stature in her field, Dr. Weaver-Osterholtz, in the final estimation, relied only upon the views of others in rendering the ultimate opinion upon standard of care. The other experts were never identified, never subjected to cross-examination and, indeed, their comments were never even memorialized by Dr. Weaver-Osterholtz. Section 90.704 was never intended to be so broad as to encompass the testimony presented in the present case. The majority opinion incorrectly applies the statute, and, moreover, is not faithful to our pronouncement in Sikes. The majority opinion is also in direct conflict with Gerber, Maklakiewicz, Riggins, and Schwarz. The conflict with Schwarz is particularly inescapable. The Schwarz court adopted a rule that prohibits an expert from bolstering or corroborating her opinions with the opinions of other experts who do not testify because such testimony, as in the present case, "improperly permits one expert to become a conduit for the opinion of another expert who is not subject to cross-examination." 695 So.2d at 455.
I would reverse and remand for a new trial.